IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ID IMAGE SENSING LLC, | |
| Plaintiff, | C.A. No. 20-136-RGA |
| v. | |
| OMNIVISION TECHNOLOGIES, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

**DEFENDANT OMNIVISION'S OPENING BRIEF
IN SUPPORT OF ITS FED. R. CIV. P. 12(B)(6) MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM UNDER WHICH RELIEF MAY BE GRANTED**

Kelly E. Farnan (#4395)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King St.
Wilmington, Delaware 19801
farnan@rlf.com
(302) 651-7700

OF COUNSEL:

BARACK FERRAZZANO
KIRSCHBAUM & NAGELBERG, LLC
David H. Bluestone
david.bluestone@bfkn.com
Michael D. Educate
michael.educate@bfkn.com
200 West Madison Street
Suite 3900
Chicago, Illinois 60606
(312) 984-3100

*Counsel for Defendant OmniVision
Technologies, Inc.*

DATED:  March 30, 2020

## TABLE OF CONTENTS

I.   Nature and Stage of the Proceedings ........................................................... 1

II.  Summary of the Argument ........................................................................... 1

III. Statement of the Facts ................................................................................. 2

    A.   The Parties ........................................................................................... 2

    B.   The '145 Patent and the Asserted Claim ...........................................3

    C.   Allegations Directed to the Accused Products ...................................6

        1.   Plaintiff Fails to Identify a Plausible "Indicator Set to Indicate Whether A First of Second Flash Device Is Present" in the Accused Products ................7

        2.   The Complaint Fails to Identify Exposure Times and Gains Stored in the Accused Products In Response to an Indicator Setting ................7

        3.   The Complaint Fails to Identify Any Association of Exposure Time and Gain with Two Flash Devices ................8

IV.  Legal Standards .......................................................................................... 8

    A.   Patent Eligibility under 35 U.S.C. § 101 ...........................................9

    B.   Direct Infringement ..........................................................................10

    C.   Indirect Infringement .......................................................................11

V.   Argument ................................................................................................... 11

    A.   The Asserted Claim of the '145 Patent Is Invalid Pursuant to 35 U.S.C. § 101 ......................................................................................11

        1.   The Asserted Claim of the '145 Patent Is Directed to an Abstract Idea .......... 11

        2.   The Asserted Claim of the '145 Patent Does Not Transform the Abstract Idea into a Patent-Eligible Invention................... 14

    B.   Plaintiff Has Failed to State a Plausible Claim of Direct Infringement ......................................................................................16

    C.   Plaintiff's Indirect Infringement Allegations Should Be Dismissed....................18

VI.  Conclusion ................................................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    573 U.S. 208 (2014) ............................................................................. 1, 9, 10, 11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................. 8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................. 8

*Bilski v. Kappos,*
    561 U.S. 593 (2010) ............................................................................................. 9

*Chargepoint, Inc. v. SemaConnect, Inc.,*
    920 F.3d 759 (Fed. Cir. 2019) ........................................................................... 16

*Elec. Power Grp., LLC v. Alston S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016) ............................................................... 10, 14, 15

*F2VS Techs., LLC v. Aruba Networks, Inc.,*
    No. 17-cv-0754, 2018 WL 1732152 (D. Del. April 10, 2018) ........................... 10, 16

*Fast 101 Pty. Ltd. v. Citigroup Inc.,*
    No. 19-1819, 2020 WL 489575 (D. Del. Jan. 30, 2020) ................................. 12, 14, 15

*Gaelco S.A. v. Arachnid 360, LLC,*
    293 F. Supp. 3d 783 (N.D. Ill. 2017) ................................................................. 14

*In re TLI Comm'ns LLC Patent Litig.,*
    823 F.3d 607 (Fed. Cir. 2016) ................................................................... 12, 13, 14

*Intellectual Ventures I LLC v. Cap. One Bank (USA),*
    792 F.3d 1363 (Fed. Cir. 2015) ......................................................................... 12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
    566 U.S. 66 (2012) ........................................................................................ 9, 10

*Modern Telecom Sys., LLC v. TCL Corp.,*
    No. 1:17-cv-00583, 2017 WL 6524526 (D. Del. Dec. 21, 2017) ..................... 10, 17, 18

*Nextpoint, Inc. v. Hewlett-Packard Co.,*
    227 F. Supp. 3d 963 (N.D. Ill. 2016) ................................................................. 16

*Nice Sys. Ltd. v. Clickfox, Inc.*,
　207 F. Supp. 3d 393 (D. Del. 2016) ....................................................................... 6, 9

*Secure Cam, LLC v. Tend Insights, Inc.*,
　351 F. Supp. 3d 1249 (N.D. Cal. 2018) ..................................................................... 13

*SIPCO, LLC v. Streetline, Inc.*,
　230 F. Supp. 3d 351 (D. Del. 2017) ......................................................................... 10

*Toshiba Corp. v. Imation Corp.*,
　681 F.3d 1358 (Fed. Cir. 2012) .............................................................................. 11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
　874 F.3d 1329 (Fed. Cir. 2017) .................................................................... 11, 12, 15

*Voit Techs., LLC v. Del-Ton, Inc.*,
　757 F. App'x 1000 (Fed. Cir. 2019) .......................................................................... 9

*Yanbin Yu v. Apple Inc.*,
　392 F. Supp. 3d 1096 (N.D. Cal. 2019) ........................................................ 13, 14, 15

## STATUTES

35 U.S.C. § 101 ............................................................................................... 1, 9

35 U.S.C. § 271(b) ............................................................................................ 11

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On January 29, 2020, Plaintiff ID Image Sensing LLC ("ID Image Sensing" or

"Plaintiff") filed a complaint alleging that Defendant OmniVision Technologies, Inc.

("OmniVision") infringed claim 1 of U.S. Patent No. 7,333,145 ("the '145 patent")[1]. (D.I. 1,

¶¶ 10, 12, 16 ("Complaint").) Claim 1 fails to claim patent-eligible subject matter and is invalid.

Plaintiff has also failed to plausibly plead that the abstract acts in claim 1 ("Asserted Claim") are

performed by the accused products. OmniVision moves to dismiss the complaint pursuant to

FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.     SUMMARY OF THE ARGUMENT

The Complaint should be dismissed because claim 1 of the '145 patent is invalid due to a

failure to claim patent-eligible subject matter pursuant to 35 U.S.C. § 101 and *Alice Corp. Pty.*

*Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). The '145 patent claims the abstract idea of

identifying which of two different flash lighting devices is connected to the camera and setting

the camera's exposure settings accordingly. Adjusting camera settings based on lighting

conditions has been performed since the invention of the camera itself and it is well-known,

even by novice photographers, that changing the flash device used with the camera results in

changing the exposure settings used by the camera.

The physical elements listed in the Asserted Claim are well-known components for any

digital camera: an image sensor, a gain amplifier, flash lighting devices, as well as exposure time

and gain settings. ('145 patent, 11:65–12:14.) The purported advancement is identifying which

one of two flash devices is connected (via "an indicator set to indicate whether a first flash

device or a second flash device is present") and storing exposure and gain values in a memory

---

[1] Citations to the '145 patent reference Exhibit A to Plaintiff's Complaint. (D.I. 1-1.)

("plurality of storage locations [] configured to store an exposure time and gain") "associated with" the first and second flash device. (*See id.* at 12:1–14.) This abstract idea results in no modification of the conventional components already used in digital cameras.  All of the features related to the purported advancement of claim 1 of the '145 patent are claimed in a purely functional manner—indicating, storing, and associating. (*See id.*) The Complaint should be dismissed because the sole allegedly infringing claim is not directed to patent-eligible subject matter.

The Complaint should also be dismissed because it fails to plausibly show that OmniVision has infringed the '145 patent. The Complaint provides no basis to conclude that the accused products perform the abstract idea recited in the Asserted Claim. Plaintiff fails to present allegations to plausibly substantiate (and the purported supporting evidence hyperlinked in the Complaint in fact rejects) that there is "an indicator set to indicate whether a first flash device or second flash device is present" in the accused products. (D.I. 1, ¶¶ 11, 12; '145 patent, 12:1–2.) Nor does the Complaint even attempt to present any facts to plausibly suggest that the alleged "indicator" in the accused products causes any storing of exposure time of gain to occur or that the accused products have any capability of "associating" exposure and gain values to whether a first or second flash device is present as required by the Asserted Claim. (*See* D.I. 1, ¶¶ 10–12; '145 patent, 12:1–14.)

## III.   STATEMENT OF THE FACTS

### A.   The Parties

Defendant OmniVision Technologies, Inc. designs, makes, and sells image sensors. Image sensors receive light and convert it into an electrical signal that can be used for a variety of imaging applications. appropriate exposure.

Plaintiff ID Image Sensing, LLC is a non-practicing entity and a wholly owned subsidiary of Acacia Research Group LLC. (D.I. 4.)

### B.     The '145 Patent and the Asserted Claim

The '145 patent is directed to incorporating functionality existing in a "conventional standalone digital camera" into smaller "portable electronic devices." ('145 patent, 1:5–22.) The '145 patent explains, "portable electronic devices, such as mobile telephones, include image capture capabilities similar to those associated with digital camera [but] may be smaller and/or more compact that many digital cameras, and as a result do not have the space that is needed to accommodate all of the components of a convention standalone digital camera." (*Id.,* 1:5–11.) The '145 patent asserts that size and lower price of the portable device caused common digital camera features to be omitted. (*Id.,* 1:11–19.) Thus, the objective of the '145 patent is to provide the conventional "image capture features in portable electronic devices while minimizing the size and cost associated with the features." (*Id.*, 1:20–22.)

The '145 patent does not identify any structure that modifies or otherwise improves upon existing conventional digital camera components to allow its functions to be performed in smaller portable device. (*Id*) The purported invention is instead directed to the abstract idea of storing digital camera settings (exposure time and gain) based on whether a first or second flash device is present. (*Id.* at 1:26–39.) Adjusting camera settings based on which flash device is present—an abstract idea that is equally applicable to a person manually changing camera settings, the conventional digital camera automatically changing the settings, or a smaller portable electronic device.

The Asserted Claim addresses conventional digital camera features: an image sensor array, gain amplifier, and memory storing exposure time and gain values, along with two flash

lighting devices. (*Id.* at 11:66–12:5.) The '145 patent fails to include any discussion of the existing technology from which the inventions purportedly provide advancements. (*Id.*) Nonetheless, there is no plausible factual dispute that they were generic features of a conventional digital camera system.

The basic fundamentals of taking a picture have remained the same since the first cameras. "Understanding Exposure," a photography guide published in 2004, the time of filing of the '145 patent, explains:

> [E]very camera—be it film or digital—is nothing more than a lightproof box with a lens on one end and light sensitive film or a digital card at the other end. The same light enters the lens (the aperture), and after a certain amount of time (determined by shutter speed) the image will be recorded (on film or digital media). The recorded image has been called—since day one—an *exposure*, and still is.

(Bluestone Decl., Ex. A at 5 (emphasis in original).)

"Understanding Exposure" further instructs:

> A correct exposure is a simple combination of three important factors: aperture, shutter speed, and ISO. Since the beginning of photography, these same three factors have always been at the heart of every exposure, whether that exposure was correct or not, and they still are today— even if you're using a digital camera.

(*Id.* at 7.) In a digital camera, the ISO component is performed by the gain amplifier. (*See, e.g.*, Bluestone Decl., Ex. B at 3:28, 3:35 (discussing equivalence of gain to ISO levels).)

The aperture, exposure time, and ISO interact to form the exposure. (Bluestone Decl., Ex. A at 7, 15.) Determining the values for an exposure depends on the light in the scene and has long been assisted by light meters within the camera to calculate appropriate values. (Bluestone Decl., Ex. A at 10–11, Ex. B.) For digital cameras, it was known to adjust gain of the

signal produced by the image sensor and exposure time based on the lighting conditions. (*See generally id.* at Ex. B.) The specific correlation of different gain and exposure time settings depending on the lighting conditions were also known to be stored in memory in the digital camera. (*Id.* at 2:40–46 and Tables 1–3.)

The Asserted Claim recites the conventional features as background and the recites the abstract idea in a purely functional manner. Claim 1 calls for utilizing a memory setting (the "indicator") to indicate whether a first or second flash device and then storing exposure time and gain values associated with either the first or second device based on the indicator setting. These features are highlighted in reproduced claim 1 below.

> **1**. A camera module comprising:
> an image sensor array;
> a gain amplifier;
>
> an indicator set to indicate whether a first flash device or
>     a second flash device is present; and
> a plurality of storage locations;
> wherein the plurality of storage locations is configured to
>     store an exposure time and a gain, wherein the exposure
>     time and the gain are associated with the first flash
>     device in response to the indicator indicating the pres-
>     ence of the first flash device, wherein the exposure time
>     and the gain are associated with the second flash device
>     in response to the indicator indicating the presence of
>     the second flash device, wherein the image sensor array
>     is configured to capture an image using the exposure
>     time, and wherein the gain amplifier is configured to
>     perform processing on the image using the gain.

('145 patent, 11:65–12:14.)

"Stripped of its generic [digital camera] components and limitation to [digital imaging]," the Asserted Claim is merely the abstract idea of identifying which flash lighting devices are connected to the camera and setting the camera's exposure settings accordingly. *See*

*Nice Sys. Ltd. v. Clickfox, Inc.*, 207 F. Supp. 3d 393, 399 (D. Del. 2016) (Andrews, J.). Consider a photographer setting different lighting arrangements for portraits in her studio and writing down the camera settings for each arrangement. The '145 patent seeks to procure a right to exclude others from performing this idea using claimed "storage locations," the digital memory equivalent to pen and paper.

Claim 1 does not recite any mechanical, electrical, or any other type of elements recited for accomplishing the task of <u>indicating</u> whether a first or second flash device is connected. ('145 patent, 11:65–12:14.) It claims only "an indicator set to indicate whether a first flash device or a second flash device is present." (*Id.* at 12:1–2.) Nor does the Asserted Claim recite how the camera module <u>associates</u> gain and exposure with the first or second flash devices. (*Id.* at 12:4–14.) Nor does the claim recite how indication of which flash device is present would result in <u>storing</u> new settings. (*Id.*) These abstract ideas are untethered to the conventional components recited in the Asserted Claim, which operate in the same way with these purely functional limitations.  ('145 patent, 11:65–12:14.)

### C.    Allegations Directed to the Accused Products

The accused products are image sensors. (D.I. 1, ¶ 11.) The Complaint asserts that OV1380 is representative of its infringement contentions and hyperlinks to a publicly available datasheet. (*Id.* at ¶ 11, 12.) The Complaint is nonetheless devoid of any plausible allegations directed to at least the following requirements the Asserted Claim: (1) an "indicator set to indicate whether a first flash device or second flash device is present"; (2) the "indicator" causing an exposure time and gain to be stored based on the indication of the presence of the first or second flash device; and (3) exposure time and gain associated with the first and second

flash devices. (*See* D.I. 1, ¶¶ 10–12.) Plaintiff fails to identify any facts to provide a reasonable inference these claim limitations could be found in the accused products.

> 1.    **Plaintiff Fails to Identify a Plausible "Indicator Set to Indicate Whether A First of Second Flash Device Is Present" in the Accused Products**

With respect to the claimed "indicator set to indicate whether a first or second flash device is present," Plaintiff asserts that "[t]he 'STROBE' flash control signal is described as an indicator that supports both LED and Xenon flash modes." (*Id.* at ¶ 12.) Plaintiff includes no citation for this assertion. (*Id.*) Nowhere in the hyperlinked datasheet is the STROBE signal "described as an indicator." (*See generally,* Bluestone Decl., Ex. C..)

As the OV13850 datasheet makes clear, the STROBE signal is an ***output*** signal that turns on and off a flash device. (*Id.*, at 2, 3, 6.) It is a binary high and low waveform sent from the image sensor via an output pin to the connected flash device to instruct the flash device to turn on and off. (*See id.* at 2–4, 7–10.) Indeed, the datasheet confirms that STROBE signal "supports LED and Xenon modes," but that relates only to configuring the STROBE signal's output waveform to properly turn on and off those flash devices. (*Id.*, at 7–10.) Nowhere in the datasheet does it suggest that the STROBE output signal does anything other than turn on and off the connected flash device. (*See generally id.*)

> 2.    **The Complaint Fails to Identify Exposure Times and Gains Stored in the Accused Products In Response to an Indicator Setting**

Claim 1 requires the following causalities: "exposure time and the gain are associated with the first flash device in response to the indicator indicating the presence of the first flash device" and "with the second flash device in response to the indicator indicating the presence of

the second flash device." ('145 patent, 12:5–11.) Plaintiff fails to allege that the STROBE signal in the accused products causes any exposure time and gain to be stored. (D.I. 1, ¶ 12.)

> **3.    The Complaint Fails to Identify Any Association of Exposure Time and Gain with Two Flash Devices**

Claims 1 further separately requires that "the exposure time and the gain are associated with the first flash device" and "the exposure time and the gain are associated with the second flash device." ('145 patent, 12:5–11.)  Plaintiff fails to present any allegations to suggest that the accused products have any capability to associate exposure time or gain values to first and second flash devices.  (D.I. 1, ¶ 12.) The Complaint, however, only presents allegations related to a single flash device, asserting  "exposure time and gain for the particular type of flash device are stored in the control register bank." (*Id.*) This fails to address any the requisite association between first and second flash devices performed by the accused products.

## IV.    LEGAL STANDARDS

A complaint cannot survive a Rule 12(b)(6) motion if it does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this Court must accept all well-pleaded allegations as true, it is not required to accept as true legal conclusions couched as factual allegations. *E.g.*, *Iqbal,* 556 U.S. at 676 (quoting *Twombly*, 550 U.S. at 555). A Rule 12(b)(6) motion can be granted if when upon review of the well-pleaded allegations taken as true and in the light most favorable to the complainant, the court determines that the allegations "could not raise a claim of entitlement to relief." *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 558.

### A.      Patent Eligibility under 35 U.S.C. § 101

Patent infringement claims are properly resolved at the pleadings stage based on patent ineligibility under Section 101. *See, e.g.*, *Voit Techs., LLC v. Del-Ton, Inc.,* 757 F. App'x 1000 (Fed. Cir. 2019) (affirming dismissal under Rule 12(b)(6) where asserted claims were directed to abstract idea and did not recite an inventive concept); *Nice Sys.,* 207 F. Supp. 3d at 405 (dismissing complaint under Rule 12(b)(6) where asserted claims were directed to abstract idea and did not recite an inventive concept), *aff'd*, 698 F. App'x 615 (Mem) (Fed. Cir. 2017).

Subject matter is patentable so long as it constitutes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court holds that the "laws of nature, physical phenomena, and abstract ideas" are "specific exceptions to § 101's broad patent-eligibility principles." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010) (internal quotations omitted). The abstract idea exclusion to patentability embodies the longstanding rule that an idea itself is not patentable. *Alice*, 573 U.S. at 218 (internal quotations, citations, and brackets omitted).

The Supreme Court has also laid out a two-step "framework for distinguishing between patents that improperly claim laws of nature, natural phenomena, and abstract ideas and patents that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 132 S.Ct. 1289 (2012)).

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. . . . If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application.

*Alice*, 573 U.S. at 217 (citing and quoting *Mayo*, 132 S.Ct. at 1296–98). The Supreme Court has

explained that the second step requires "a search for an 'inventive concept'—*i.e.*, an element or

combination of elements that is 'sufficient to ensure that the patent in practice amounts to

significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217–18

(quoting *Mayo*, 132 S.Ct. at 1294) (text in brackets added by the Supreme Court in *Alice*). The

steps are closely related inquiries, given that they both "involve overlapping scrutiny of the

content of the claims." *Elec. Power Grp., LLC v. Alston S.A.*, 830 F.3d 1350, 1353 (Fed. Cir.

2016) (internal citations omitted).

### B.      Direct Infringement

Liability for direct infringement exists when a party "without authority makes, uses,

offers to sell, or sells any patented invention, within the United States[.]" 35 U.S.C. § 271(a). To

sufficiently plead direct infringement, the plaintiff must do more "than merely allege

entitlement to relief." *Modern Telecom Sys., LLC v. TCL Corp.*, No. 1:17-cv-00583, 2017 WL

6524526, at *1 (D. Del. Dec. 21, 2017). "Plaintiff does not have to allege everything that it has,

but it does have to write a complaint (construing the allegations in the light most favorable to

the plaintiff) that makes it plausible to think a defendant has infringed at least one claim of any

asserted product." *SIPCO, LLC v. Streetline, Inc.,* 230 F. Supp. 3d 351, 353 (D. Del. 2017)

(Andrews, J.).  Where plaintiff fails to plead facts on the face of the complaint sufficient to show

substantive plausibility of the allegations, dismissal of the complaint is appropriate. *E.g., F2VS

Techs., LLC v. Aruba Networks, Inc.*, No. 17-cv-09754, 2018 WL 1732152, at *2 (D. Del. Apr. 10,

2018) (Andrews J.) (granting dismissal based on allegations directed to accused devices clearly

lacking functionality to constitute a wireless network as claimed).

## C.      Indirect Infringement

Liability for indirect infringement exists when a party "actively induces infringement of a patent." 35 U.S.C. § 271(b). Indirect infringement allegations directed to induced infringement "must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *F2VS Techs.,* 2018 WL 1732152, at * 3 (quoting *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012)). "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts plausibly showing that the defendant specifically intended a third party to infringe the asserted patents and knew that the third party's acts constituted infringement." *F2VS Techs.,* 2018 WL 1732152, at * 3 (internal quotations and brackets omitted).

## V.      ARGUMENT

### A.      The Asserted Claim of the '145 Patent Is Invalid Pursuant to 35 U.S.C. § 101

#### 1.      The Asserted Claim of the '145 Patent Is Directed to an Abstract Idea

Under the first step in the *Alice* framework, the Court is to determine whether the claims are directed to a patent-ineligible concept. *Alice Corp.,* 573 U.S. 208 at 218. A court "looks to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (internal citations omitted).  Here, asserted claim 1 of the '145 patent focuses on the abstract idea of identifying which flash device is connected and associating camera settings to the different flash devices.

As shown in the highlighted reproduction of the Asserted Claim, *supra* at 5, the purported inventive concept employs purely functional claiming, with no connection to any

structure other than the generic use of computer memory.  The remainder of the claim is generic digital camera technology.  Claim 1 recites "an indicator to indicate where a first flash device or second flash device is present" and two acts of associating exposure time and gain to the first and second flash devices.  ('145 patent, 12:1–11.)  It is wholly undefined how these acts of association occur in the claim. (*Id*.)

Merely correlating one set of data to another is an abstract idea that is not patent eligible. *See In re TLI Comm'ns LLC Patent Litig.,* 823 F.3d 607, 611 (Fed. Cir. 2016) (affirming granting of motion to dismiss when at-issue claim was "directed to the abstract idea of classifying and storing digital images in an organized matter"); *Intellectual Ventures I LLC v. Cap. One Bank (USA),* 792 F.3d 1363, 1371 (Fed. Cir. 2015) (affirming judgment of invalidity based on entry of data into a computer database and organizing the data based on certain criteria).

Moreover, it is well-established that functionally claimed abstract ideas that do not advance the underlying conventional components beyond their established use are invalid as patent ineligible.  In *Two-Way,* the Federal Circuit affirmed the Court's invalidity ruling pursuant to 35 U.S.C. § 101, finding the claim to be directed to patent ineligible subject matter because the claim required functional results without sufficient description of "how to achieve those results in a non-abstract way." 874 F.3d at 1337 (internal citations omitted). Similarly, in *Fast 101 Pty. Ltd. v. Citigroup Inc.*, No. 19-1819, 2020 WL 489575 (D. Del. Jan. 30, 2020) (Andrews J.), *appeal docketed,* No. 20-1458 (Fed.Cir.), the Court found that the claims recited "results-oriented" functionality that did "not offer an improvement in the functioning" of the technical components cited. *Id*. at *5 (internal citations omitted).

The mere presence of conventional digital camera components in the Asserted Claim does not amount to patent eligible subject matter. *See In re TLI Comm'ns*, 823 F.3d at 611; *Secure Cam, LLC v. Tend Insights, Inc.*, 351 F. Supp. 3d 1249, 1255–56 (N.D. Cal. 2018) ("[T]he claims at issue do not describe a specific improvement to digital camera functionality. Rather the claims at issue describe 'conventional or generic technology in a nascent but well-known environment.'") (quoting *TLI Comm's*, 823 F.3d at 612).

In *Yanbin Yu v. Apple Inc.*, 392 F. Supp. 3d 1096 (N.D. Cal. 2019), the plaintiffs alleged infringement of their patent entitled "Digital Cameras Using Multiple Sensors with Multiple Lenses." *Id*. at 1100. Similar to the '145 Patent's inclusion of a non-descript "image senor array[,"] a "gain amplifier," and "storage location" (*E.g.* D.I. 1, at ¶ 10), the patent in *Yanbin* was "directed to improving digital photos" from digital cameras through "an arrangement of multiple image sensors, lenses and a processor to produce high quality and film-like true color digital images." *Yanbin*, 392 F. Supp. 3d at 1100–01 (internal quotations omitted). The court ruled in *Yanbin* that the at-issue claims were "drawn to the abstract idea of taking two pictures and using those pictures to enhance each other in some way." *Id*. at 1104. The Court further explained that "those having skill in the art have used multiple exposures, or the combining of multiple images, to enhance images," since "the earliest years of the photographic medium[.]" *Id.* (internal citations omitted). Like asserted claim 1 here, despite having conventional digital imaging components recited in the claim, the court found the claims were "only defined in terms of their functions." *Id*. at 1105 (citing *In re TLI Comm'ns*, 823 F.3d at 609, 612).

Like in *Yanbin*, the '145 patent does not require any "special hardware or software" to automate the digital equivalent of writing down which flash device is attached and which camera settings should be used. *See id.* Plaintiff's complaint similarly fails to "allege anything

other than a generic environment" of an image sensor, amplifier, and storage locations. *See id.* ("The complaint also does not allege anything other than a generic environment of image sensors and lenses for the invention.").

This abstract idea in the '145 patent is even less substantive than other unpatentable ideas involving the collection of information, the analysis of that information, and display of the results of that collection and analysis. *See Elec. Power Grp.,* 830 F.3d at 1353. These types of patent claims are consistently found to be ineligible subject matter under Section 101. *See, e.g., id.* at 1353-54 (citing cases); *TLI Commn's,* 823 F.3d at 611. Identifying which flash device is connected and camera settings associated to that device is an unpatentable abstract idea.  (*See* '145 patent, 11:65–12:14.)

### 2.   The Asserted Claim of the '145 Patent Does Not Transform the Abstract Idea into a Patent-Eligible Invention

Analysis under the second step under the *Alice* framework does not yield an inventive concept in this case. Even the most novice photographer appreciates that the use of flash lighting will affect how a camera takes an exposure. The claim merely performs the digital equivalent of writing down which flash device is attached and remembering the camera settings for that device.

A patent lacks an inventive concept when "there is no cognizable improvement to the functioning of the prior art technical system at all." *Fast 101*, 2020 WL 489575, at * 4; *see also Gaelco S.A. v. Arachnid 360*, LLC, 293 F. Supp. 3d 783, 794 (N.D. Ill. 2017) ("Applying an abstract idea through use of conventional components in their conventional manner is not an inventive concept."). Asserted claim 1 does not specify any manner by which the image sensor array, gain amplifier, or flash devices are in any way modified or improved upon beyond their

standard applications and features. ('145 patent, 11:65–12:14.) Indeed, even the storage of the exposure time and gain settings in memory is unchanged. At best, asserted claim 1 uses conventional computing components (computer memory) to implement the storage of information—which flash device is present and the appropriate settings for the flash device.

As explained by the Federal Circuit in *Two-Way Media,* "to save a patent at step two, an inventive concept must be evident in the claims." 874 F.3d at 1338 (internal citations omitted). Even if the specification recites algorithms and structure that could have provided some technological advancement, the focus is on whether the asserted claim includes an inventive step, not the specification. *Id.*

Claim 1 by features only the abstract idea itself. ('145 patent, 11:65–12:14.) The purportedly inventive acts of having an "indicator set to indicate whether a first flash device is present" and associating the exposure time and gain in response to the indication of whether a first or second flash device is present impart no modification of the conventional components. (*See id.*) Indeed, the functionality recited is wholly untethered to any structure other than having values stored in computer memory. (*See id.*) The claims do not include any inventive concept because they are not directed to improving the digital camera; they simply use digital memory to implement mental tasks performed by a photographer. *See*, *e.g.*, *Elec. Power Grp*., 830 F.3d at 1354; *Fast 101*, 2020 WL 489575, at *5.

Plaintiff unsurprisingly does not attempt to allege any inventive concepts beyond the abstract idea in the Complaint, because it cannot. The inability to identify an inventive concept is fatal to its lawsuit. *See, e.g., Yanbin*, 392 F. Supp. 3d at 1106 (emphasizing that the patent-holder made no allegations that "the claimed invention contains unconventional digital camera elements beyond the abstract idea to which the patent is directed" or that "the asserted

combination and arrangement of 'well-understood, routine [and] conventional' digital camera components goes beyond the abstract idea of using multiple images to enhance one image") (quoting *Chargepoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774 (Fed. Cir. 2019) (brackets added by the District Court in *Yanbin*); *Nextpoint, Inc. v. Hewlett-Packard Co.*, 227 F. Supp. 3d 963, 971–972 (N.D. Ill. 2016) (dismissing a complaint for alleged infringement of a patent that claimed "a method and system based on well-understood, generic components that behave as expected and communicate with each other in standardized ways") (citing *TLI Comm'ns*, 823 F.3d at 615) (holding that there was no inventive concept where "the recited physical components behave exactly as expected according to their ordinary use")), *aff'd*, 680 F. App'x 1009 (Fed. Cir. 2017).

The asserted claim of the '145 patent fails both steps in the *Alice* framework.  Plaintiff's complaint fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) because the claim is invalid pursuant to 35 U.S.C. § 101.

### B.        Plaintiff Has Failed to State a Plausible Claim of Direct Infringement

The claim limitations that are directed to the abstract idea of identifying whether a first or second flash device is present and associating the camera settings to different flash devices are not plausibly alleged in Plaintiff's complaint.  Addressing the allegations in the complaint in the light most favorable to Plaintiff still fails to show any substantive plausibility for an assertion of claim 1 of the '145 patent. *See*, *e.g.*, *F2VS Techs.*, 2018 WL 1732152, at *2. Plaintiff either entirely fails to address how the accused products could plausibly perform the functional acts recited in the claim, or presents unsupported statements that contradict the very evidence hyperlinked in the Complaint.

The Complaint needed to include facts that plausibly indicate that the OmniVision accused products practice each of the limitations found in claim 1 of the '145 patent, but it fails to do so. *See Modern Telecom Sys.*, 2017 WL 6524526, at *2.  With respect to the claim limitation "indicator set to indicate whether a first or second flash device is present," the Complaint asserts that "[t]he 'STROBE' flash control signal is described as an indicator that supports both LED and Xenon flash modes." (D.I. 1 at ¶ 12.) This in direct conflict with the datasheet hyperlinked in the Complaint. The STROBE signal is nowhere "described as an indicator." (*See generally* Bluestone Decl., Ex. C.) Instead, the STROBE signal is an output signal that turns on and off the single connected flash device. (*Id.*, at 2, 3, 6.) The signal that connects to the flash device to turn on the flash has no bearing on the wholly separate functionality of adjusting exposure settings, such as exposure time and gain.

This allegation is also legally untenable. The '145 patent itself makes it clear that a control signal that turns on the flash device is not the claimed "indicator" in claim 1. That functionality is instead recited as an additional claim limitation present in dependent claim 6. (*See* '145 patent, 12:28–38.) There are simply no facts in the complaint to plausibly suggest that the output pin that turns on and off the flash device performs any indicating function to some other component in the image sensor.

With respect to the requirements that "exposure time and the gain are associated with the first flash device in response to the indicator indicating the presence of the first flash device" and "with the second flash device in response to the indicator indicating the presence of the second flash device" (*id.* at 12:28–38), Plaintiff fails to include any facts to infer that the STROBE signal causes any storing of exposure time and gain to a first or second flash device to occur.

–17–

Similarly, with respect to the requirements that "the exposure time and the gain are associated with the first flash device" and "the exposure time and the gain are associated with the second flash device" (*id.*), Plaintiff fails to present any allegations to suggest that the accused products have any capability to associate exposure time or gain values to first and second flash devices. (*See* D.I. 1, ¶ 12.) The single flash device allegation that "exposure time and gain for the particular type of flash device are stored in the control register bank" (*id.*) could be performed by any prior art device.  Any single flash device is inherently a device of a particular type.  These allegations fail to address the requirement of association between first and second flash devices performed by the accused products. Moreover, nowhere in the hyperlinked datasheet does it refer to associating exposure time and gain to any particular device. (*See generally,* Bluestone Decl., Ex. C.)

Plaintiff has failed to allege direct infringement and its Complaint should be dismissed.

### C.      Plaintiff's Indirect Infringement Allegations Should Be Dismissed

Plaintiff has also failed to adequately plead inducement infringement. Plaintiff's purported act of direct infringement is customer's "making, using, selling , [and] offering for fale and/or importatation the Accused Products[.]" (D.I. 1, ¶ 17.) This mirroring of the direct infringement to create allegations that OmniVision's customers are making OmniVision products evidences the emptiness of Plaintiff's indirect infringement allegations. The purported acts of direct infringement are simply being a downstream recipient of the accused products.

Similarly, the purported acts of intending for infringement are all general conduct that OmniVision takes to sell its products: (1) actually selling the products—which fails to  provide any evidence of an intent to get others to infringe; (2) marketing the products—which only speaks to the desire to the sell the product; and (3) providing datasheets—which like marketing

simply serves to promote the features of the product. (*Id.*) Nowhere does Plaintiff present any evidence of OmniVision seeking to have a customer use the Accused Products in some manner that would cause it to infringe or any plausible suggestion that OmniVision would have had any knowledge of the patent to knowingly seek to cause others to infringe.

These allegations are further unable to state a claim because the earliest date alleged for knowledge of the '145 patent is the filing of the present litigation. It is not plausible to have an intent to cause others to infringe due to sales, marketing, and datasheets, when those activities predate the alleged date at which OmniVision became aware of the '147 patent. There is no allegation of knowledge at that time and thus there can be no inducement.

## VI.    CONCLUSION

Asserted claim 1 of the '145 patent is invalid due to patent ineligible subject matter. Further, the Complaint fails to state a claim of direct or indirect infringement. OmniVision respectfully requests that this Court enter an order dismissing the Complaint and for any other relief that the Court deems proper.

Dated:  March 30, 2020

OF COUNSEL:

BARACK FERRAZZANO
KIRSCHBAUM & NAGELBERG, LLC
David H. Bluestone
david.bluestone@bfkn.com
Michael D. Educate
michael.educate@bfkn.com
200 West Madison Street
Suite 3900
Chicago, Illinois 60606
(312) 984-3100

/s/  Kelly E. Farnan
Kelly E. Farnan (#4395)
RICHARDS, LAYTON & FINGER
One Rodney Square
920 N. King St.
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

*Attorneys for Defendant OmniVision Technologies, Inc.*