**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ID IMAGE SENSING LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 20-136-RGA |
| | ) |
| OMNIVISION TECHNOLOGIES, INC., | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

In this patent action filed by Plaintiff ID Image Sensing LLC ("Plaintiff") against Defendant OmniVision Technologies, Inc. ("Defendant"), presently pending before the Court is Defendant's motion to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 8) For the reasons set forth below, the Court recommends that the Motion be GRANTED-IN-PART and DENIED-IN-PART.

**I.   BACKGROUND**

   **A.   Factual Background**

In the operative Complaint, Plaintiff accuses Defendant's image sensors, including Defendant's OV13850, OV2655, OV3640, OV4689, OV5640, OV5642, OV5648, OV5693, OV8858 and OV8865 models of image sensors (the "accused products"), of infringing at least claim 1 of Plaintiff's United States Patent No. 7,333,145 (the "'145 patent"). (D.I. 1 at ¶¶ 7-19) The '145 patent is entitled "Camera Module," and generally speaking, it relates to circuitry for camera modules used in a variety of digital cameras, including those incorporated into mobile phones, tablets and laptop computers. (*Id*. at ¶ 8 & ex. A)[1] Claim 1 recites the following:

---

[1]   The '145 patent is attached as Exhibit A to the Complaint. Further citations will simply be to the "'145 patent."

> **1.** A camera module comprising:
>
> an image sensor array;
>
> a gain amplifier;
>
> an indicator set to indicate whether a first flash device or a second flash device is present; and
>
> a plurality of storage locations;
>
> wherein the plurality of storage locations is configured to store an exposure time and a gain, wherein the exposure time and the gain are associated with the first flash device in response to the indicator indicating the presence of the first flash device, wherein the exposure time and the gain are associated with the second flash device in response to the indicator indicating the presence of the second flash device, wherein the image sensor array is configured to capture an image using the exposure time, and wherein the gain amplifier is configured to perform processing on the image using the gain.

('145 patent, cols. 11:65-12:14)

The Complaint includes excerpts of a schematic block diagram provided in a representative datasheet and preliminary specification ("datasheet") of one of the accused products, the OV13850 image sensor. (D.I. 1 at ¶ 11) It also provides a hyperlink to the datasheet for the OV13850 image sensor. (*Id.*)

Further relevant facts related to resolution of the Motion will be set out as needed in Section III.

### B. Procedural Background

Plaintiff filed its Complaint on January 29, 2020. (D.I. 1) The instant Motion was filed on March 30, 2020, (D.I. 8), and briefing was completed on April 20, 2020, (D.I. 12). United States District Judge Richard G. Andrews referred the Motion to the Court for resolution on April 21, 2020. (D.I. 13)

## II. LEGAL STANDARD

When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting all of the complaint's well-pleaded facts as true, but disregarding any legal conclusions. *Id.* at 210-11. Second, the court determines whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In assessing the plausibility of a claim, the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## III. DISCUSSION

With its Motion, Defendant argues that the instant Complaint should be dismissed because: (1) claim 1 of the '145 patent fails to claim patent-eligible subject matter pursuant to 35 U.S.C. § 101 ("Section 101"); and (2) it fails to sufficiently state claims for direct and indirect patent infringement. (D.I. 9; D.I. 12) The Court will first assess the arguments for dismissal regarding Section 101 and then will review the remaining arguments for dismissal.

### A. Section 101/Patent Eligibility

#### 1. Legal Standard

As was noted above, the first portion of the instant Rule 12(b)(6) Motion is premised on the assertion that the patent claim-in-suit is directed to patent-ineligible subject matter. The Court has often set out the relevant legal standards for review of such a motion, including in *Genedics, LLC v. Meta Co.*, Civil Action No. 17-1062-CJB, 2018 WL 3991474, at *2-5 (D. Del. Aug. 21, 2018). The Court hereby incorporates by reference its discussion in *Genedics* of these relevant legal standards. It will follow this legal guidance in assessing the Motion.

### 2. Argument

#### a. *Alice*'s Step One

The Court first assesses *Alice*'s step one, which asks whether the claim at issue is "directed to" an abstract idea. What is an abstract idea? It can be (but is not necessarily limited to) a "preexisting, fundamental truth" that "exis[ts] in principle apart from any human action[,]" or a "method of organizing human activity" (such as a "longstanding commercial practice"). *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 220 (2014) (internal quotation marks and citations omitted); *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256-57 (Fed. Cir. 2014). A claim to an abstract idea has been described by the United States Court of Appeals for the Federal Circuit as one directed to a "'disembodied' concept . . . a basic building block of human ingenuity, untethered from any real-world application." *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1286 (Fed. Cir. 2013) (Lourie, J., concurring) (citation omitted). Beyond that, the "abstract idea" category has not been crisply defined, *see Alice*, 573 U.S. at 221 (declining to "labor to delimit the precise contours of the 'abstract ideas' category"), and the Supreme Court of the United States and the Federal Circuit have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases, *see Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

Defendant asserts that claim 1 of the '145 patent[2] is directed to the abstract idea of "identifying which of two different flash lighting devices is connected to the camera and setting the camera's exposure settings accordingly." (D.I. 9 at 1; *see also id.* at 11; D.I. 12 at 3) Defendant then summarizes this abstract idea more broadly, as "[m]erely correlating one set of data to another" and "storing related information." (D.I. 9 at 12; D.I. 12 at 5 n.2) The Court certainly agrees that the latter concepts—correlating certain information with other pieces of information and storing information—amount to abstract ideas. Indeed, the Federal Circuit has repeatedly said so, noting that these and other similar concepts are untethered from real-world application.[3]

But what about "identifying which of two different flash lighting devices is connected to the camera and setting the camera's exposure accordingly"? Is *that* an abstract idea? It does not really sound to the Court like a "disembodied concept," nor a preexisting, "fundamental truth" about the natural world. And it incorporates the act of setting a camera's exposure after identifying what lighting device is connected to the camera. That act sounds a bit like "real-world application." In any event, since it ultimately will not have an impact on resolution of this

---

[2]   The parties exclusively discussed claim 1 of the '145 patent in their briefing, and therefore that is the only claim that the Court assesses here.

[3]   *See, e.g., CardioNet, LLC v. InfoBionic, Inc.*, 816 F. App'x 471, 475 (Fed. Cir. 2020) ("At step one, we conclude that the claims are directed to collecting, analyzing, and displaying data, which we have repeatedly held to be abstract concepts."); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (claims were directed to a patent-ineligible concept where their focus was "on collecting information, analyzing it, and displaying certain results of the collection and analysis"); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (concluding that the claims were "directed to the abstract idea of classifying and storing digital images in an organized manner"); *Content Extraction & Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (finding that the asserted claims "are drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory").

5

part of the Motion, below the Court will assume *arguendo* that Defendant is correct and that "identifying which of two different flash lighting devices is connected to the camera and setting the camera's exposure accordingly" is in fact an abstract idea. The Court just notes for the record that it is not so sure that is correct.

Plaintiff, for its part, argues that the claims are not "directed to" this abstract idea. Instead, it argues that Defendant's articulation of the focus of the claims is at too high a level of abstraction. Plaintiff notes that the patent identifies a specific problem—providing "additional image capture features in portable electronic devices while minimizing the size and cost associated with the features"—and asserts that claim 1 is directed solving this problem through "a new and novel camera module that may be used to accommodate the processing of images captured by a device that may have more than one type of flash device." (D.I. 11 at 2, 16; *see also id.* at 17)

So is claim 1 of the '145 patent actually "directed to" the abstract idea at issue?[4] The Court agrees with Plaintiff that it is not. In the end, Defendant's asserted abstract idea simply does not fairly capture claim 1's character as a whole. The Court so concludes for three primary reasons.

First, it is important not to lose sight of the fact that this is a claim to a "camera module[.]" ('145 patent, col. 11:65) And not just any camera module, but one that has a number of specific, tangible sub-components. The claimed camera module is comprised of an "image sensor array" (which captures an image), a "gain amplifier" (which performs processing on the

---

[4] In *Alice*'s first step, the "'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their *character as a whole*'" or their "focus" is directed to excluded subject matter. *Enfish*, 822 F.3d at 1335-36 (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)) (emphasis added).

image), an indicator (which indicates which of two particular flash devices are present) and multiple storage locations (which store exposure times and gains associated with the respective flash devices). (*Id*., cols. 11:66-12:14; *see also* D.I. 11 at 16)  Of course, the Court is aware that just because a claim is to an apparatus, that does not mean that the claim cannot be directed to an abstract idea. *Cf. Chamberlain Grp., Inc. v. Techtronic Indus. Co*., 935 F.3d 1341, 1348 (Fed. Cir. 2019) ("Without more, the physical nature of CGI's claim elements (*e.g*., controller, interface, and wireless data transmitter) is not enough to save the claims from abstractness, where the claimed advance is directed to the wireless communication of status information using off-the-shelf technology for its intended purpose.").  But this is not an apparatus claim that is otherwise dominated by the use of functional language.  And at a certain point, when the real-world, tangible, specific components of a device seem to predominate what is claimed, that has to count for something in the Section 101 calculus.  Here, claim 1's content at least provides some indication that this is not a claim to an abstract idea—and that it is instead a claim to a non-abstract, physical item that contains additional various non-abstract, physical elements, which in turn must execute particular functions.  *See, e.g.*, *Innovative Global Sys., LLC v. Keep Truckin, Inc.*, C.A. No. 19-641 (MN), C.A. No. 19-1708 (MN), 2020 WL 1443201, at *6 (D. Del. Mar. 24, 2020) (concluding that the representative claim was "not directed to the abstract idea of logging and recording data, but rather to a particular onboard system for a vehicle that continuously monitors certain data from the vehicle data bus and generates a log indicating compliance status of a driver"); *Ironworks Patents, LLC v. Apple Inc*., Civil Action No. 17-1399-RGA, 2018 WL 2944475, at *3-4 (D. Del. June 12, 2018) (concluding at *Alice*'s step one that the claims were not directed to an abstract idea because they were "directed to tangible systems—a 'portable device' and a 'mobile station,' respectively—and include 'specific components that are

7

configured to perform specific functions in response to specific events'") (citation omitted); *RICPI Commc'ns LLC v. JPS Interoperability Sols., Inc.*, Civil Action No. 18-1507-RGA, 2019 WL 1244077, at *4 (D. Del. Mar. 18, 2019) (concluding at *Alice*'s step one that the claims were not directed to an abstract idea because they "are tied to particular machines: a first two way radio, a shared, public base/repeater station, at least one target base station, and a second two-way radio"); *Immersion Corp. v. Fitbit, Inc.*, 313 F. Supp. 3d 1005, 1023-24 (N.D. Cal. 2018) (rejecting defendant's argument that the claim was directed only to the abstract idea of notification through vibration, where "[t]he weight of the claim clearly focuses on a tangible, non-abstract device as the invention which, through the allegedly unconventional combination of components, contains the new and useful feature of notifying the device's user of independent events through vibration" and thus the "focus of the claim is a new and useful application of notification embodied in a physical device"); *Xoran Techs., LLC v. Planmeca USA, Inc.*, No. 17 CV 7131, 2018 WL 2320944, at *4 (N.D. Ill. May 22, 2018) (finding that a claim to a scanner comprising elements capable of taking x-ray images and external images, a computer with certain functions, and a display with a certain function, was not directed to the abstract idea of taking and displaying x-ray and external images of a patient).[5]

---

[5] Defendant argues to the contrary that "[t]he mere presence of conventional digital camera components in the Asserted Claim does not amount to patent eligible subject matter[,]"; in support it likens claim 1 of the '145 patent to claims found to be patent-ineligible by the Federal Circuit in *In re TLI Commc'ns Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) and by the United States District Court for the Northern District of California in *Yanbin Yu v. Apple Inc.*, 392 F. Supp. 3d 1096 (N.D. Cal. 2019). (D.I. 9 at 13; D.I. 12 at 5-6) The Court, however, is not persuaded that these decisions should impact its conclusion. The claims at issue in *In re TLI Commc'ns* were directed to methods and apparatuses for classifying and storing digital images in an organized manner utilizing a telephone unit and server. 823 F.3d at 609-10. In concluding that the claims were directed to the abstract idea of classifying an image and storing the image based on its classification, the Federal Circuit pointed out that "[t]he specification does not describe a new telephone, a new server, or a new physical combination of the two" and failed to "provide any technical details for the tangible components, but instead predominately describes

Second, the Court's conclusion is bolstered by the specification,[6] which seems to emphasize that the claim's focus is on the physical camera module itself and its internal sub-components and circuitry. To start, the title of the patent is "Camera Module." ('145 patent at 1) Then the "Background" section of the specification spends quite a bit of time discussing the internal camera module components. It explains that portable electronic devices such as mobile telephones may include image capture capabilities but "do not have the space that is needed to accommodate all of the components of a conventional standalone digital camera." ('145 patent, col. 1:5-11) Thus, certain common features in digital cameras "may be difficult" to include in such portable electronic devices. (*Id.*, col. 1:11-13) Moreover, the specification explains, these portable electronic devices may be cheaper than conventional standalone digital cameras, and so certain common features in digital cameras may be excluded from portable electronic devices in an effort to keep those devices cheaper. (*Id.*, col. 1:13-19) The stated objective of the patent is

---

the system and methods in purely functional terms." *Id.* at 612. In contrast, here the claim at issue does not utilize purely functional language, and there is some indication that the focus of the claim is on the presence of particular components configured in particular ways. With respect to *Yanbin Yu*, there the district court concluded that a claim to an "improved digital camera[,]" which was said to be an advance over the prior art due to its use of multiple image sensors, was nevertheless directed to the abstract idea of "taking two pictures and using those pictures to enhance each other in some way." 392 F. Supp. 3d at 1104. To the extent that that claim at issue in *Yanbin Yu* could be said to be similar to claim 1 of the '145 patent, that decision is not binding precedent on this Court.

[6]     In order to determine what a patent claim is really "directed to" at step one, the Federal Circuit has encouraged district courts to consider the content of the patent's specification. *Cf. Enfish*, 822 F.3d at 1337 (indicating that it is appropriate to look to a patent's specification to determine whether a claim of the patent is "directed to" a particular concept, and that if a claim contains a particular element that is described by the patent's specification as what the "present invention comprises[,]" this suggests that the claim may be directed to that element or concept) (internal quotation marks and citation omitted); *Internet Patents Corp.*, 790 F.3d at 1348 (same, and noting that if a concept is described in the patent as being "the innovation over the prior art" or the "essential, most important aspect" of the patented invention, that suggests that the claim is directed to that concept) (internal quotation marks and citation omitted).

to "provide additional image capture features in portable electronic devices while minimizing the size and cost associated with the features." ('145 patent, col. 1:20-23)[7]

Next, in the specification's "Summary" section, the patent again seems to suggest that its focus is on incorporating various physical camera components (some of which are required to include specific functionality) into the claimed camera module:

> In an exemplary embodiment, the present disclosure provides a camera module comprising an image sensor array, a gain amplifier, an indicator set to indicate whether a first flash device or a second flash device is present, and a plurality of storage locations. The plurality of storage locations is configured to store an exposure time and a gain. The exposure time and the gain are associated with the first flash device in response to the indicator indicating the presence of the first flash device, and the exposure time and the gain are associated with the second flash device in response to the indicator indicating the presence of the second flash device. The image sensor array is configured to capture an image using the exposure time, and the gain amplifier is configured to perform processing on the image using the gain.

('145 patent, col. 1:26-39; *see also* D.I. 1 at ¶ 8 ("Generally speaking, the '145 patent relates to circuitry for camera modules used in a variety of digital cameras . . ."))[8] And Claim 1, in turn,

---

[7] Admittedly, one challenge with this patent, relevant to the Section 101 inquiry, is that aside from this stated objective (i.e., providing certain image capture features in portable electronic devices), the patent does not do a great job of telling us what exactly *are* the aspects of the current invention that amount to a step forward, as compared to what was then in the art. (D.I. 9 at 4 ("The '145 patent fails to include any discussion of the existing technology from which the inventions purportedly provide advancements.")) This does make it a lot more difficult to figure out what the true focus of claim 1 is meant to be.

At one point in its briefing, Defendant states that the "purported advancement" of the patent is captured by the claim limitation requiring that the indicator indicate the presence of a first or second flash device—and that in response to this, the stored exposure time and gain are associated with that device. (D.I. 9 at 1-3) But *the patent* never really says that this feature (alone or in combination with other claimed elements) is the "purported advancement."

[8] The specification goes on to further describe these components and how they function together to capture and process an image using stored exposure time and gain associated with the flash device that is present. ('145 patent, cols. 2:27-11:47; *see also* D.I. 11 at 3-4)

recites these various elements and features, which can be "used in a variety of digital cameras, including those incorporated into mobile phones, tablets and laptop computers." (D.I. 1 at ¶ 8)

This is all to say that if the specification tells us that claim 1 is directed to anything, it seems to be to a camera module that includes the various physical sub-components listed in the claim (some of which are required to have particular functionality). And it does not seem to indicate that the claim is simply directed to the concept of "identifying which of two different flash lighting devices is connected to the camera and setting the camera's exposure accordingly." (D.I. 11 at 17 (Plaintiff asserting that the "claims are directed to a 'camera module' and include specific components that are configured to perform specific functions in response to specific events"); *id*. at 18 ("[T]he claims are directed to the creation of something physical[.]"))

Third, the crux of Defendant's argument against patent eligibility seems to be that claim 1 merely recites a camera module that was already known in the prior art. (*See* D.I. 12 at 4 (arguing that the abstract idea "is performed with no change in the operation of the digital camera, which already provided for storing exposure time and gain and allowed for the use of different flash devices"); *see also id.* at 1 ("Plaintiff does not dispute that the physical components, as well as the gain and exposure time values stored in memory, recited as elements in claim 1 are present in a conventional digital camera"); D.I. 9 at 3 ("The [] patent does not identify any structure that modifies or otherwise improves upon conventional digital camera components to allow its functions to be performed in a smaller portable device."); *id*. ("The Asserted Claim addresses conventional digital camera features[.]")) In other words, when Defendant repeatedly faults the claim for simply listing "conventional" elements,[9] it really seems

---

[9] In asserting what was or was not "conventional" in the field of digital cameras at the time of the patent's filing, Defendant cites repeatedly to documents that are not attached to or referenced in Plaintiff's Complaint. (D.I. 9 at 4-5) In addressing a motion to dismiss, the Court

11

to be arguing that the claim is invalid for anticipation under 35 U.S.C. § 102, or for obviousness under 35 U.S.C. § 103—as opposed to arguing that the claim is directed to an abstract idea. But whether a camera module with these sub-components existed in the prior art, such that the claim is invalid for anticipation or obviousness, is a separate and distinct inquiry from the Section 101 inquiry. *See, e.g.*, *FYF-JB LLC v. Pet Factory, Inc.*, 410 F. Supp. 3d 912, 917 (N.D. Ill. 2019) (explaining that defendant's request at step one that the court ignore the tangible components of the claim because they are well understood, routine and conventional "would be more appropriate as a question of whether the '643 patent claims are novel in light of prior art"); *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, Civil Action No. 17-1390-LPS-CJB, 2019 WL 4466766, at *8 n.7 (D. Del. Sept. 18, 2019).

For the foregoing reasons, the Court cannot conclude that claim 1 is drawn to the abstract idea put forward by Defendant. Instead, with respect to that claim, it does appear to "matter[] . . . by what process [and] machinery the result is accomplished." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (internal quotation marks and citation omitted). In light of this conclusion, the Court need not reach step two of the *Alice* inquiry. *See, e.g.*, *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018); *Innovative Global Sys., LLC*, 2020 WL 1443201, at *6.

### B. Failure to State a Claim for Direct and Indirect Infringement

Defendant next asserts that the Complaint fails to assert facts plausibly demonstrating direct infringement and also fails to adequately plead induced infringement. (D.I. 9 at 16-19; D.I. 12 at 9-10 & n.4) The Court will address these arguments in turn.

---

cannot take into account such documents. *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### 1. Direct Infringement

Liability for direct infringement arises when a party "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent[.]" 35 U.S.C. § 271(a). At the pleading stage, a plaintiff alleging patent infringement need not "'plead facts *establishing* that each element of an asserted claim is met'" or "'*prove* its case at the pleading stage'" *Nalco Co. v. Chem-Mod*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (emphasis added, citation omitted). Instead, the plaintiff must only allege facts "'that *plausibly* indicate that the accused products contain each of the limitations found in the [asserted] claim.'" *Uniloc 2017 LLC v. ZenPayroll, Inc.*, Civil Action No. 19-1075-CFC-SRF, 2020 WL 4260616, at *3 (D. Del. July 23, 2020) (emphasis added) (citations omitted), *report and recommendation adopted*, 2020 WL 5077416 (D. Del. Aug. 27, 2020); *see also Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*, Civil Action No. 19-1239-CFC, 2020 WL 4365809, at *1 (D. Del. July 30, 2020); *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *9 (D. Del. Sept. 28, 2018); *N. Star Innovations, Inc. v. Micron Tech., Inc.*, Civil Action No. 17-506-LPS-CJB, 2017 WL 5501489, at *1-2 (D. Del. Nov. 16, 2017), *report and recommendation adopted*, 2018 WL 11182741 (D. Del. Jan. 3, 2018).

Here, it is undisputed that asserted claim 1 requires that, *inter alia*: (1) the indicator is set to indicate which of two flash devices is connected to the camera module; and (2) "in response to" that indication, the exposure time and the gain are associated with the appropriate flash device. (D.I. 12 at 3; *see also id.* at 10; D.I. 11 at 16-17) In other words, the claim requires that: (1) indicating the presence of the first or second flash device (2) *causes* the exposure time and gain to be associated with the flash device. (D.I. 12 at 2) Defendant argues that Plaintiff's

Complaint fails to plausibly allege that the "in response to" limitation is found in the accused products. (*Id.* at 10; *see also* D.I. 9 at 7-8, 17)[10]

On this score, the Complaint makes clear (and it seems plausible) that the required "indicator" is the OV13850 image sensor's "STROBE" flash control signal. (*Id.* at ¶ 12) However, the Complaint never clearly addresses how it is plausible that the OV13850 image sensor meets the "in response to" limitation. In its briefing, in an apparent attempt to rectify this problem, Plaintiff points to an excerpt from one page of the 147-page datasheet referenced in the Complaint. (D.I. 11 at 11) But even there, Plaintiff never clearly explains how this excerpt plausibly demonstrates that the limitation is met. (*Id.*) For that reason, the Court recommends that Defendant's Motion be granted with respect to Plaintiff's direct infringement claim. *See, e.g.*, *Ancora Techs., Inc. v. Lenovo Grp. Ltd.*, Civil Action No. 1:19-cv-01712-CFC, 2020 WL 4530718, at *1 (D. Del. Aug. 6, 2020) (granting defendant's motion to dismiss direct infringement claim where the complaint did not "match" claim limitations to "components and functions of the Accused Products"); *Uniloc 2017 LLC*, 2020 WL 4260616, at *4 (recommending that defendant's motion to dismiss a direct infringement claim be granted, where the plaintiff did not show "how Gusto plausibly infringes by pleading facts connecting the Gusto platform to claim 1 of the '293 patent"); *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 490 (D. Del. 2019) (granting motion to dismiss direct infringement claims where the complaint made "no attempt to connect specific components of the accused systems to elements of the

---

[10] Initially, Defendant also asserted that the Complaint failed to plausibly allege additional limitations present in claim 1. (D.I. 9 at 7-8, 16-18) But in its reply brief, Defendant focused on only the "in response to" claim limitation, and appeared to drop its arguments as to the other limitations. So that is the only limitation that Court will address herein. (D.I. 12 at 10 ("The Court need only address Plaintiff's inability to present any allegation or argument that the Accused Products perform the 'in response to' claim limitation to confirm that the Complaint must be dismissed."); *see also id.* at 2)

asserted claims" and the defendant "should not be required to comb through 144 pages of exhibits to understand the bases of a plaintiff's claims").

### 2. Induced Infringement

A plaintiff asserting a claim of induced infringement must show, in addition to direct infringement, that "the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *see also Helios Streaming, LLC v. Vudu, Inc.*, Civil Action No. 19-1792-CFC-SRF, 2020 WL 2332045, at *2 (D. Del. May 11, 2020). Plaintiff's Complaint alleges that Defendant first had knowledge of Plaintiff's allegations of infringement regarding the '145 patent by Defendant "no later than the filing date of" the Complaint. (D.I. 1 at ¶ 17) Since that date, the Complaint alleges, Defendant has induced its direct and indirect customers to directly infringe at least claim 1 of the '145 patent by: (1) selling the accused products to the customers; (2) marketing the infringing capabilities of the products to the customers; and (3) providing instructions and technical support to the customers regarding the use of the products. (*Id.*)

These allegations are insufficient to plausibly allege an induced infringement claim. For one, as noted above, a plaintiff must plausibly allege direct infringement in order to establish a claim of induced infringement. Since Plaintiff failed to sufficiently plead the underlying direct infringement, the claim for indirect infringement is also necessarily insufficiently pleaded. *See, e.g.*, *SuperInterconnect Techs. LLC v. HP Inc.*, Civil Action No. 19-0169-CFC, 2019 WL 6895877, at *3 (D. Del. Dec. 18, 2019).

However, even had Plaintiff sufficiently pleaded direct infringement, its induced infringement claim would still fail, because the earliest date alleged for knowledge of the patent

15

(and infringement of the patent) is the date of the filing of the Complaint. (*See* D.I. 9 at 19) The Court recently set out its view that a "plaintiff cannot plausibly plead that a defendant had the requisite knowledge of patent infringement by simply asserting in a complaint that the defendant had such knowledge *as of the date of filing of that complaint*." *ZapFraud, Inc. v. Barracuda Networks, Inc.*, Civil Action No. 19-1687-CFC-CJB, 2020 WL 5646375, at *2 (D. Del. Sept. 22, 2020) (emphasis in original) (citing cases). This is because a party cannot plausibly claim in a complaint that a defendant had knowledge of infringement of the patent-in-suit (required for an induced infringement claim) or had the specific intent to encourage another's infringement (also required for an induced infringement claim) when, prior to the very moment that this complaint was filed, the defendant had never actually: (1) been aware of the patent's existence; (2) known that the patent was being infringed; or (3) intended that anyone infringe the patent. *Id.* ("A plaintiff's claim of indirect infringement in such circumstances sounds to the Court like a hypothetical assertion about what *might or might not happen in the future*, not a plausible claim about what *in fact has already happened*.") (emphasis in original). For these reasons, the Court recommends that Defendant's Motion be granted with respect to induced infringement.

    **C.**    **Nature of Dismissal**

Plaintiff has requested leave to file an amended complaint to the extent the Court agreed with Defendant that its allegations failed to state a plausible claim of infringement. (D.I. 11 at 13) Because it is not clear to the Court that allowing the opportunity to amend would be a futile act, because this is the first time the Court has found these claims to be deficiently pleaded, and because leave to amend should be given freely "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), the Court recommends that dismissal of the claims found wanting should be without prejudice. It further recommends that Plaintiff be given leave to file a further amended

16

complaint addressing the deficiencies outlined above, and that if the District Court affirms its decision herein, that Plaintiff be given 14 days to file such an amended complaint. *See TriDiNetworks Ltd. v. Signify N. Am. Corp.*, Civil Action No. 19-1063-CFC-CJB, 2020 WL 2839224, at *5 (D. Del. June 1, 2020).

## IV.     CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's Motion be GRANTED-IN-PART and DENIED-IN-PART in the manner set out above.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  November 24, 2020

                                                    *Christopher J. Burke*
                                                    Christopher J. Burke
                                                    UNITED STATES MAGISTRATE JUDGE