# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ID IMAGE SENSING LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>OMNIVISION TECHNOLOGIES, INC.,<br><br>    Defendant. | C.A. No. 20-cv-136-RGA-JLH |

## PLAINTIFF'S FEBRUARY 28, 2022 DISCOVERY DISPUTE LETTER

Dated: February 28, 2022

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Jonathan T. Suder (admitted *pro hac vice*)
Corby R. Vowell (admitted *pro hac vice*)
Dave R. Gunter (admitted *pro hac vice*)
FRIEDMAN, SUDER & COOKE
604 East 4th Street, Suite 200
Fort Worth, TX 76102
817-334-0400
Fax: 817-334-0401
jts@fsclaw.com
vowell@fsclaw.com
gunter@fsclaw.com

*Attorneys for Plaintiff*

Dear Judge Hall:

Plaintiff ID Image Sensing LLC ("IIS") has requested that Omnivision Technologies, Inc. ("Omnivision") produce worldwide sales data and highly relevant patent license agreements. Omnivision has refused to produce documents in either category. In addition, IIS requests that the Court extend the fact discovery deadline for two months to allow the parties to complete additional document production and take depositions.

Worldwide Sales Information

IIS has alleged that Omnivision infringes claim 1 of U.S. Patent No. 7,333,145 ("the '145 patent") by making, using and selling its image sensors that are used in cameras incorporated in various consumer electronics devices, such as laptops, smartphones, and tablets. Omnivision is a U.S. company with its global headquarters in Santa Clara, California. While it does sell some products in the U.S., its image sensors are manufactured abroad and the vast majority of its sales occur outside of the U.S. IIS alleges that Omnivision infringes both directly and by inducing infringement. D.I. 22, at ¶¶21-22. IIS is entitled to have information for worldwide sales of the Accused Products which is relevant to at least its indirect infringement theory of inducement. Damages for inducement would encompass sales of all Accused Products sold worldwide that were incorporated into other products of Omnivision's customers and that were imported back into the United States. *See Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, 807 F.3d 1283, 1308 (Fed. Cir. 2015).

In *Carnegie Mellon*, the semiconductor chips at issue were for use in hard-disk drives. *Carnegie Mellon*, 807 F.3d at 1288. Of 2.34 billion infringing chips sold globally in extraterritorial transactions, just over half a billion made it to the United States via importation. *Id*. Marvell's "importation" under Section 271(a) of the Patent Act was through third parties in the global stream of commerce as is Omnivision's liability for inducement infringement in this case. There, the chips were first manufactured at a Taiwanese foundry, and then sent to customers' manufacturing sites in Asia to be put into customer drives. *Carnegie Mellon Univ. v. Marvell Tech. Group Ltd.*, 986 F. Supp. 2d. 574, 594 (W.D. Pa. 2013). Those drives were then sold to overseas laptop manufacturers, who in turn incorporated the drives into their products at their own factories. *Id.* Estimates of import data at trial showed that up to 556,812,092 of the 2.34 billion accused chips inside such drives and laptops were then imported into the United States, within such assemblies. *Id.*

In ruling on an appeal from post-trial motion rulings, the Federal Circuit held that Marvell had "presented no basis on which to deem legally insufficient, or of deficient weight for new-trial purposes, the evidence CMU submitted to the jury, based on industry data sources, of how many of Marvell's hard-drive chips were imported into the United States." *Carnegie Mellon*, 807 F.3d at 1308. The court independently reached and decided the measure of importation damages, even though Marvell had (wisely) refrained from challenging inclusion of importation damages as somehow "extraterritorial." *Id.* at 307-08. Under such analysis, the court held, "we see no extraterritoriality bar," because "Section 271(a) makes clear that Congress meant to reach such 'import[ation]' and 'use[]' as domestic conduct." *Id.* at 1307-08. For royalties based on the 556,812,092 chips whose inclusion in damages stemmed from their importation (as opposed to inclusion based "entirely on the location of sale"), the Federal Circuit "therefore affirm[ed] the judgment insofar as the royalty rests on imported chips." *Id.*

Consequently, for the portion of the image sensors sold globally that find their way to the U.S. from a foreign sale, even where they do not originate with an activity that qualifies as direct infringement under 35 U.S.C. § 271(a), "it makes no sense" to impose a legal bar against their inclusion into a royalty base. For these reasons, Omnivision should be required to provide worldwide sales information for the accused image sensors or at least for those that are ultimately imported into the U.S. by a third party.[1]

Patent License Agreements

IIS has requested that Omnivision produce all patent license agreements in its possession related to image sensors which would be relevant to a determination of reasonable royalty in this case. Omnivision has refused to provide such agreements even though it has several relevant agreements. IIS is aware that Omnivision has at least entered into patent license or settlement agreements with Collabo Innovations, Inc. (Exh. A) and Ziptronix, Inc. (Exh. B) related to Omnivision's image sensor products. These documents are responsive and relevant to damages issues in the litigation. In addition, IIS has learned that Omnivision entered into an agreement with Kodak to acquire a large number of its patents related to image sensors. (Exh. C). Omnvision should be required to produce each of these agreements as well as any other patent license agreements.

There can be no real dispute that licensing agreements are relevant to a reasonable royalty calculation, even where the agreements arise from other litigations and involve other similar patents and products. Indeed, as stated above, at least two of the *Georgia-Pacific* factors used to calculate a reasonable royalty expressly contemplate considering licenses for other patents and inventions: *Factor No. 2*: The rates paid by the licensee for the use of *other patents comparable to the patent in suit*; *Factor No. 12*:  The portion of the profit or of the selling price that may be customary in the particular business or *in comparable businesses* to allow for the use of the invention *or analogous inventions*. *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2nd Cir. 1971) (emphasis added).

Federal Circuit "cases appropriately recognize that settlement agreements can be pertinent to the issue of reasonable royalties." D.I. 545 at 14-15 (quoting *In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012)).  Federal Circuit precedent also recognizes that agreements involving other products or patents are relevant to a reasonable  royalty determination, even if those agreements arise from a different litigation, where the agreements are "sufficiently comparable to the hypothetical license at issue in suit." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009).  *See generally ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860, 869-872 (Fed. Cir. 2010). Were license agreements such as those described above excluded from discovery in litigation, there would be virtually no evidence on which to rely for these *Georgia-Pacific* factors.

Omnivision objects to the scope of IIS' request stating that it would potentially encompass agreements that are not comparable licenses or would not be admissible. However, IIS is asking

---

[1] IIS has also requested information and documents regarding what percentage or how many of the Accused Products have been imported into the U.S.

for patent license agreements that are specifically related to image sensors, which is what all of the Accused Products are. "For purposes of discovery, relevancy is broadly construed." *Godo Kaisha IP Bridge 1 v. TCL Commun. Tech. Holdings Ltd.*, 2018 U.S. Dist. LEXIS 37781, at *5 (March 8, 2018). Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery and permits "discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added).

If the patents that are the subject of a license are not comparable and will not provide any indication of what the patent-in-suit may be worth, the agreements will not be afforded weight in the final determination. *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 2007 U.S. Dist. LEXIS 39637, at *6 (N.D. Ill. Mar. 1, 2007). "A different standard exists for discoverability of other comparable patent licenses and the ultimate admissibility and weight to be given to the licenses at trial." *23-24. See also Godo Kaisha IP Bridge 1* 2018 U.S. Dist. LEXIS 37781, at *6.

Further, it is important to note that in an earlier discovery hearing in this case, Omnivision asked this Court to compel IIS to use "image sensor" as one of its search terms for ESI. If that term is narrow enough such that it would not be considered burdensome for IIS to use it as a search term and would yield responsive electronic documents, it would seem that any license agreements related to image sensors would likewise be relevant, at least for discovery purposes.

Extension of Fact Discovery

Finally, IIS requests that the Court extend the fact discovery deadline by 60 days to May 14, 2022 and adjust the remaining deadlines (expert reports/dispositive motions) by the same amount. IIS seeks this extension not for the purposes of delay but to accommodate the completion of document review and depositions. Despite serving its responses to IIS' First Set of Requests for Production months earlier, Omnivision waited until the deadline for substantial completion of document production to produce approximately 100,000 pages of imaged documents and hundreds of other native files with highly relevant technical information.

Most of these documents should have been produced along with Omnivision's core technical document production at the beginning of the case. IIS has diligently reviewed this massive production and has learned that Omnivision sells a large number of additional infringing image sensors that IIS could not have determined were infringing based on publicly available information. IIS will amend its infringement contentions to include these additional products.

Further, Omnivision has exacerbated the problem by refusing to produce the relevant sales information and license agreements that are necessary for IIS to prepare its damages case. There are also several depositions (including four third parties) that each side will need to take once the document production issues are resolved. IIS has not sought a previous extension of the Court's schedule and should be afforded this additional time for the parties to complete discovery.

                Respectfully submitted,

                /s/ Brian E. Farnan

                Brian E. Farnan

cc: Counsel of Record (Via E-Filing)