```
1              IN THE UNITED STATES DISTRICT COURT

2            IN AND FOR THE DISTRICT OF DELAWARE

3
       ID IMAGE SENSING LLC,          )
4                                     )
       --------------------Plaintiff, )
5                                     )Case No.
              vs.                     )20-CV-136-RGA-
6                                     )JLH
                                      )
7      OMNIVISION TECHNOLOGIES, INC., )
                                      )
8      --------------------Defendant. )

9
             TRANSCRIPT OF DISCOVERY CONFERENCE
10

11           DISCOVERY CONFERENCE had before the

12     Honorable Jennifer L. Hall, U.S.M.J., via

13     teleconference on the 16th of February, 2022.

14                      APPEARANCES

15        FARNAN LLP
             BY: MICHAEL FARNAN, ESQ.
16
                         -and-
17
          FRIEDMAN SUDER & COOKE
18           BY: CORBY VOWELL, ESQ.

19                           Counsel for Plaintiff

20
          RICHARDS, LAYTON & FINGER, P.A.
21           BY: KELLY E. FARNAN, ESQ.

22                       -and-

23        BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG
       LLP
24           BY: DAVID BLUESTONE, ESQ.
             MICHAEL EDUCATE, ESQ.
25                           Counsel for Defendant
```

1              THE COURT:  This is Jennifer Hall.

2       We are here for a teleconference.  This is

3       Image Sensing versus Omnivision Technologies,

4       Case Number 20-CV-136-RGH-JLH.  We have a court

5       reporter on the line today.  The court reporter

6       is Deanna Warner.

7            May I have appearances, please, starting

8       with the plaintiff.

9              MR. FARNAN:  Good afternoon, Your

10      Honor.  This is Michael Farnan.  With me on the

11      line is Corby Vowell from Friedman, Suder, and

12      Cooke.

13              THE COURT:  Good afternoon.

14           May I have appearances for Defendant.

15              MS. FARNAN:  Good afternoon, Your

16      Honor.  For Defendant OmniVision, it's Kelly

17      Farnan from Richards, Layton, and finger.  I'm

18      joined by my co-counsel David Bluestone and

19      Michael Educate from Barack Ferrazzano, and

20      Mr. Educate will handle the ESI issues, and

21      Mr. Bluestone will be handling the acquisition

22      document issue.

23              THE COURT:  So I can tell you I've

24      reviewed the letters and the attachments, and I

25      have a couple thoughts about what might be

1    going on here, but I'll give each side a few

2    minutes to add anything they want to add, and I

3    have some questions as well.

4         So this is Defendant's motion, so I'll

5    hear from Defendant first.  Go ahead, counsel.

6         MR. EDUCATE:  Good afternoon, Your

7    Honor.  This is Michael Educate on behalf of

8    Defendant Omnivision.  The last name is spelled

9    E-d-u-c-a-t-e  just for the record.

10        So I think in brief, Your Honor, what the

11   briefing by both parties demonstrates is that

12   the search terms that have been already run by

13   Plaintiff are demonstrably inadequate, given

14   what they've searched for is the patent, the

15   plaintiff's own name, the defendant's name, and

16   the inventor's first and last name.  We know

17   that these searches have been inadequate

18   because they have not captured all relevant

19   documents for this case.

20        Exhibit G to our initial motion

21   demonstrates this, for example, that because

22   they searched for the first and last name of

23   the inventor, they didn't initially find that

24   e-mail and later had to provide it.  When we

25   had a meet-and-confer, Your Honor, on

1          February 10th, the plaintiff indicated that

2          they may need to search for more e-mails

3          related to the patent and they may need to make

4          a fourth supplemental privilege log when we've

5          already had four previous logs that they

6          continue to add additional documents as they

7          find them, including custodians, Your Honor,

8          that were not initially disclosed in their

9          initial ESI Rule 3 disclosures.

10              At this point, Judge, the plaintiff has

11         not asserted that we have mischaracterized the

12         ESI rules in part 5B, that absent a good

13         showing of cause we can ask for up to ten more

14         terms.  Instead, they are simply refusing to

15         simply run the terms in the first place.  And

16         we asked them, if you think it's overbroad,

17         please let us know, and we'll narrow the scope.

18         They refused to even do that, despite the fact

19         that, based on their response, they have not

20         established why any of these terms are

21         overbroad.  There is nothing to suggest about

22         Plaintiffs or the operations of its parents

23         that would suggest that these search terms

24         would capture a massive swath of materials

25         related to image sensors or the underlying

1    technology, given the nature of the plaintiff

2    and the nature of this plaintiff in particular.

3         I'm happy to go term by term if there are

4    questions, Your Honor, but at bottom, I think

5    what we want, given that discovery is still

6    moving and we have depositions we'd like to

7    take before the close, that they need to run

8    these terms so that we can get a sense of what

9    documents are still out there that are relevant

10   to the case.

11        THE COURT:  I don't have any

12   questions about the particular terms.  I'll

13   hear from the other side before I ask you any

14   further questions about those terms, but I

15   guess a broader question is how did we get here

16   today?  When you all were discussing the

17   document requests and what would be produced

18   and what wouldn't be produced, did you not work

19   together to discuss what search terms were

20   going to be applied?  And why didn't propose

21   them back at the time?  I know I'm going to

22   hear from the other, and maybe that's not an

23   issue, but how did this happen, where we're

24   here and they've already done their collection?

25        MR. EDUCATE:  That's a fair question,

1    Your Honor.  So at least from our perspective,

2    what happened here was when we first initially

3    exchanged document requests and had responses,

4    we had asked them several months before they

5    disclosed the search terms on December 7th to

6    identify what search terms they were running,

7    and there was a delay in their response until

8    that date.  And, obviously, that was three days

9    before the December 10th deadline when we had

10   to substantially complete our production, which

11   Defendant did.  And in this case, we responded,

12   look, these are inadequate, given what you

13   disclosed.  We would like to run these

14   additional ones, and to date, they've refused.

15   That's sort of the abridged version of how we

16   arrived here.

17          THE COURT:  I appreciate that.  Let's

18   turn it over to the other side just on this

19   issue about the search terms.

20          So you say it's an undue burden to search

21   for the requested search terms.  How can the

22   Court make that determination without a hit

23   count or some other way that would capture --

24          MR. VOWELL:  Sorry, Your Honor.  This

25   is Corby Vowell for the plaintiff.

1           Your Honor, one of the unique things here

2     about this particular situation, as you can

3     tell from the papers, is that the plaintiff, ID

4     Image Sensing, has a parent company that,

5     essentially, has most of the documents that

6     would be related to -- and including e-mails --

7     that would be related to this particular patent

8     case, and there are not separate employee

9     e-mails for this -- in particular for this --

10    this entity.

11          Instead, it's employees of Acacia that

12    have the Acacia e-mail domain addresses, and

13    because Acacia has a number of different both

14    current and past subsidiaries that, as the

15    Court may or may not be aware, actively license

16    and enforce patents related to other

17    technologies, some that might overlap a bit

18    with this, this particular technology, but

19    certainly a lot of other entities that have

20    documents and e-mails or would encompass

21    e-mails that relate to other high-tech area,

22    CMOS technology, semiconductor chips as the In

23    Depth Test entity that was mentioned here, and

24    those technologies, while all high-tech

25    technologies, are, ultimately, not particularly

1        related here.

2             And because of the nature of the

3        business, it would be undue burden because it

4        would essentially be searching across every --

5        e-mails and other documents related to every

6        other subsidiary of -- or at least it would

7        encompass, potentially, e-mails and documents

8        related to all those other subsidiaries with

9        unrelated patents that are not at issue here

10       and the technology is not at issue.

11             THE COURT:  Let me understand here,

12       though, because you did this once with a bunch

13       of different search terms.  Why is "Dwight and

14       Poplin" a reasonable search term but "Poplin"

15       is not a reasonable search term?

16             MR. VOWELL:  Well, Your Honor, on

17       that one in particular, I think we could

18       probably agree that because the name is unique

19       enough, the last name, that perhaps "Poplin" by

20       itself might be okay.  I don't know what else

21       that could encompass, but it might encompass

22       other things.

23             But as to the others on here that are

24       just more generally related to certain areas of

25       technology or the "OmniVision and patent" or

1          "CMOS and license," those are just way too

2      broad, and although we were able to run to the

3      other search terms, we picked those to try to

4      narrow down to the scope of what is relevant to

5      this case.  I think we did an adequate job of

6      that.

7              Unfortunately, the plaintiff does not

8      have many documents related to this patent, and

9      that's partly due to the way it was acquired

10     and that the inventor does not work for the

11     plaintiff.  He works for a different company.

12     We do not -- the defendants or the defendant

13     has now subpoenaed documents from Mr. Poplin

14     and are planning to take his deposition, so

15     many of the documents that you would see in a

16     normal patent case that get produced by the

17     plaintiff, we do not have or have access to.

18              THE COURT:  I completely understand

19     that.  Let me ask you this:  What makes you --

20     facially, I'm looking at OmniVision and

21     patents, and I can see in certain areas of

22     technology that that might be overbroad.  Do

23     you have reason to think that other companies

24     in the corporate family have been thinking

25     about suing OmniVision or have sued OmniVision

```
1      such that you can just really say for sure
2      that's way overbroad?
3              MR. VOWELL:  Well, Your Honor,
4      without getting into privileged information,
5      for sure, as I sit here today, I can't say for
6      sure one way or the other.  I know that when we
7      did our initial search with the terms that we
8      had, which included OmniVision and '145 -- I
9      didn't want to limit it just to the full patent
10     number, as patents are often referred to by the
11     last three numbers -- I was comfortable that we
12     would get anything related to OmniVision that's
13     relevant because it would be related to this
14     patent or contention analysis or related to the
15     patent in this case.
16             But I don't have any specific evidence to
17     say for sure that the term "OmniVision" by
18     itself would bring up too many different
19     things, but it's just a collective group of
20     terms that they have here.  If you run all of
21     these, it will very, very likely result in a
22     significant -- it will take time not only just
23     to search them and get the search results but
24     then the vast majority of that, we believe,
25     will be completely irrelevant, so it's also
```

1      attorney time reviewing and reviewing for

2      privilege and relevancy and responsiveness, so

3      we think all of that puts an undue burden on.

4               THE COURT:  Okay.  Let me put you

5      back over to Defendant to comment on anything

6      you just heard.

7               MR. EDUCATE:  Thank you, Your Honor.

8      I think I can certainly agree with Mr. Vowell

9      on one thing.  This is not a normal patent

10     case.  The plaintiff has produced 103 documents

11     to date.  The defendant has produced thousands

12     and a hundred thousand pages.  We don't think

13     that it is an undue burden for the plaintiff to

14     run these terms.

15          Just to give you an example, Your Honor,

16     one of the ones we identified is the term

17     "camera module."  That's what they called the

18     patent in the settlement agreement.  They

19     referred to it as a camera module, and I can

20     refer to Exhibit B of our documents we provided

21     on page 13 for that.  If they have concerns

22     about terms like that, when last I checked, the

23     plaintiff nor its parent are exclusively in the

24     business of litigating patents related to

25     camera modules or image sensors.  There's

1 nothing in record that demonstrates that it's

2 undue burden.  I think the plaintiff was given

3 a disproportionate amount of discovery that

4 Defendant has provided at its own expense.

5   Again, I won't go through these terms one

6 by one, but we purposely tried to target this

7 to terms that either they have used in their

8 complaint, as such as the words "strong image

9 center" or words they use to describe the

10 patent such as "camera module" or to identify

11 entities that we know that are relevant based

12 on the limited documents they provided, in

13 particular "Fairchild" or "semiconductor" and

14 other terms related to the entity from whom

15 Acacia received this patent in the first place.

16 So we don't really see a basis to say these are

17 inappropriate.

18   THE COURT:  Let me ask you about the

19 first one, and maybe this is going to start to

20 transition into the second part of the argument

21 and so maybe you might not be the person to ask

22 about this.

23   But the first one, I take you to be

24 saying, look, we want to have documents showing

25 the negotiation of the Fairchild litigation

1       because those are relevant to a number of

2       things, including the parties' valuation of the

3       patent as well as other things that Fairchild

4       or FTM or Semi told the plaintiff company,

5       Image Sensing Company, about the patent.  You

6       made an argument as to why it's irrelevant, so

7       I get that.  But this first --

8               MR. VOWELL:  Your Honor -- go ahead.

9               THE COURT:  The first search string

10      is really going to capture more than that.  It

11      seems to me, the way it's drafted, it looks

12      like it's going to capture any document at all

13      relevant to that litigation, and that's more

14      than you need, isn't it?

15              MR. VOWELL:  Well, Your Honor, on

16      that point, I think that's -- that's a fair

17      observation.  In that sense, we can limit these

18      by time as well so that we're trying to capture

19      the relevant time period when they would have

20      been negotiating the settlement agreement.

21          In addition, Your Honor, this goes back

22      to the point you mentioned earlier about how do

23      we know the burden without knowing the result

24      of the searches.  To the extent that Plaintiff

25      is willing to say these are results we got,

1    here are some that are clearly

2    disproportionate, we're happy to talk to them,

3    but we haven't reached that first stage.

4           THE COURT:  Just following up on the

5    point you made about the time limitation, is

6    that something you could also work with them on

7    for an OmniVision search string, so I guess if

8    they have some related company that thought

9    about suing you that they don't have to go

10   through and review all those?

11          MR. VOWELL:  That would be more than

12   appropriate.

13          THE COURT:  Yeah.  Okay.  Let me hear

14   the argument on the second issue, because I do

15   think the two issues are related on the -- the

16   documents related to the agreements with

17   Fairchild and the assignments from Aptiva.

18          MR. BLUESTONE:  Your Honor, this is

19   David Bluestone on behalf of OmniVision.  To

20   give context where this arises from, OmniVision

21   served Interrogatory Number 13 on

22   November 22nd.  It asked to describe all facts

23   and circumstances related to ownership or

24   license of the patents, et cetera.  The

25   responses referenced two agreements that they

1    had produced pursuant to Rule 33(b).  We

2    followed up with a letter on December 27th

3    saying you have to produce all the documents.

4    The final agreements are not sufficient.

5         There are two facts that I think are

6    really important in getting to the appropriate

7    conclusion here.  OmniVision is seeking the

8    negotiations in the company communications only

9    for the agreements in which Acacia subsidiary

10   and predecessor interest to the plaintiff

11   acquired the patent in suit here.  There is no

12   dispute at the time related to the '145 patent.

13   The discovery we seek relates to an agreement

14   in which the '145 patent was not in dispute.

15   It was merely an asset exchanged.  As such,

16   there are no Rule 408 sensitivities as all.

17        This is the most relevant factor.  This

18   is grand factor one, Your Honor, in the patent

19   damages side of the universe.  What was the

20   actual value exchanged for the patent in suit?

21   And again, in this circumstance, the agreement

22   just says that it assigns it, and there's a

23   whole list of relevant information that you're

24   already aware of by what you said previously on

25   this call, Your Honor, so I won't waste your

1      time on it, but it's clearly relevant

2      information that just we can't get by the final

3      agreement itself.

4           I'll leave it there.  If you have any

5      further questions, there's more I can talk

6      about, but I'd like to keep it simple to start

7      here.

8           THE COURT:  No, I appreciate that.  I

9      don't have any further questions.  Let's switch

10     it over to the plaintiff.

11          Why don't you tell me about the

12     communications relevant to the negotiations

13     leading to the assignments.

14          MR. VOWELL:  So, Your Honor, just for

15     some context here, I can tell you that my firm

16     and I was one of the lawyers that represented

17     that other entity, In Depth Test, in that

18     litigation and was involved, to some extent, in

19     the settlement discussions and negotiations, so

20     I have some context for that and understand

21     what happened.

22          That settlement, as you can imagine, was

23     focused on resolving a list of litigation that

24     had been ongoing for several years, and it

25     ultimately culminated in the terms of the

1          agreement that the defendant has, and it

2          involved monetary consideration, and it

3          involved assignment of three patents, as Your

4          Honor is aware from the papers.  So all of the

5          terms and information related to the settlement

6          really is subsumed within that final agreement.

7               I think in most other contexts -- and

8          I've seen other cases and this Court has

9          referenced this in other situations, where

10         generally speaking the negotiations and

11         communications related to settlement

12         negotiations are less probative than the final

13         agreement because that's, ultimately, what the

14         parties agreed upon.  So we've given that to

15         them, and we don't see a need for them to have

16         all of the other communications that involved,

17         whether it was settlement offers or terms of

18         the agreement or drafts of the agreement that,

19         ultimately, the parties did not, you know, come

20         to an agreement on, and that the final

21         agreement should be sufficient.

22                    THE COURT:  Okay.  I understand your

23         position.  Thank you, counsel.

24              So after hearing everything everybody

25         said today, I think I'm ready to rule on this

1    dispute, so just bear with me.  We'll start

2    with the second issue that we talked about

3    today.

4        I agree with the defendant that the

5    plaintiff is going to have to produce documents

6    relating to the agreements whereby it acquired

7    these three patents, and just to be clear, I

8    take Plaintiff's point that maybe some marginal

9    relevance of what the '145 patent is worth

10   wouldn't be worthwhile in doing a search for

11   all these negotiations.  However, Defendants

12   have proffered other issues that these

13   documents might be relevant to.

14       And that takes me to the second portion

15   of the ruling.  We've got a list of search

16   terms that defendant wants run.  I'm going to

17   order that the "Poplin" search term be run, and

18   I understood that counsel for plaintiff was

19   willing to do that when we spoke on the phone

20   today.

21       With respect to the first term, I think

22   we have an acknowledgment from Defendant on the

23   phone that this is too broad and so,

24   thankfully, counsel for Plaintiff has got

25   detailed knowledge about when the settlement

1        negotiations were occurring, so hopefully you

2        all should be able to work out either a time

3        limitation or additional terms that might be

4        added to this search string whereby the parties

5        could limit the search and ease the burden on

6        plaintiff in having to search through strings

7        that may not be probative to the issues that

8        Defendant is entitled to explore with respect

9        to the '145 patent.

10           With respect to "camera module," "image

11       sensor," and "strobe," Plaintiff needs to run

12       those terms and provide hit counts to Defendant

13       and then the parties need to meet and confer

14       about further limitations as appropriate.

15           With respect to the "OmniVision" search

16       term, I take Plaintiff's point that this might

17       turn out to be burdensome in that it might

18       capture a whole host of other documents that

19       sister companies might have created when they

20       were thinking about suing OmniVision, but we

21       don't really know if that's the case or not,

22       and I heard Defendant on the phone today saying

23       that they were willing to discuss time

24       limitations.  So the parties need to meet and

25       confer on that string.

1          And then finally we have "CMOS" and

2     "license," and that request is going to be

3     denied.

4          So hopefully, that gives you all enough

5     guidance to move forward.  Does Plaintiff have

6     questions about the scope of the ruling?

7          MR. VOWELL:  Yes, Your Honor, just

8     some clarification about the second issue we

9     discussed about settlement negotiations.  I

10    want to make sure I understand what Your Honor

11    is requiring us to produce.  So it would be, I

12    guess, communications and/or other documents

13    that are related to or that were part of

14    settlement discussions between the parties.  Is

15    the Court also requiring us to produce drafts

16    of that agreement?

17          THE COURT:  Yes.  If they were

18    exchanged with the other side, yes.  If you've

19    got internal drafts that you'd like to mark as

20    privileged, I would hope that you'd be able to

21    work with the other side, that instead of

22    creating a document-by-document privilege log

23    or something like that that you could figure

24    out a way to get those logs without having to

25    go document by document.

1          MR. VOWELL:  We're happy to work with

2     the other side on it.

3          THE COURT:  Yeah.

4          MR. VOWELL:  And that would also be

5     limited in time to the scope -- it would be

6     limited in time of the scope of the -- I'm

7     sorry.

8          THE COURT:  Entitlement.  Because of

9     course, as we all recognize, the Fairchild

10    litigation involved Morris and the '145 patent

11    didn't involve it at all, except for the fact

12    that it was transferred at the end of it.

13         MR. VOWELL:  Right, Your Honor.  With

14    that clarification, I think I understand the

15    Court's ruling.

16         THE COURT:  All right.  Very good.

17    Any questions from the defendant?

18         MR. BLUESTONE:  Yeah, Your Honor.

19    This is Mr. Bluestone.  I think I have a

20    suggestion of the time frame thing that might

21    be worthwhile for us to consider.

22         To the extent that there was a time frame

23    in those negotiations before which there's no

24    asking for a patent in return, if you will, or

25    some acquisition of the patent that's going

```
1     back to the Acacia entity, we don't really
2     care.  For example, if there was an initial
3     offer to dismiss the Fairchild case and there
4     were no patents coming back within a month of
5     filing, that's not probative.  We don't care.
6     But the time frame immediately preceding the
7     acquisition of the patent -- or acquisition
8     back to the Acacia entity comes into play
9     through the conclusion to the final agreement,
10    would be the time frame I would be thinking of
11    as relevant.
12              THE COURT:  Well, that sounds like a
13    perfectly reasonable suggestion to me, so I
14    would ask you to propose it to the other side
15    and have a meet and confer, and I think you all
16    should be able to get it resolved from there.
17              MR. BLUESTONE:  Thank you, Your
18    Honor.
19              THE COURT:  Any other questions?
20              MR. VOWELL:  Nothing from the
21    plaintiff, Your Honor.
22              MR. BLUESTONE:  Just because fact
23    discovery is going to be closing soon, I just
24    hope that we can have conversations even this
25    week with the other side.  We're available
```

1      through this week, and hopefully we won't have

2      to bother you any more.

3           THE COURT:  That sounds outstanding,

4      but if you need any more assistance, we're

5      here.  Just go ahead and file another motion

6      for a teleconference in accordance with the

7      discovery dispute procedures and we'll get you

8      back on the calendar.  Take care.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2    STATE OF DELAWARE          )
                                ) ss:
3    COUNTY OF NEW CASTLE        )

4          I, Deanna L. Warner, a Certified

5    Shorthand Reporter, do hereby certify that as

6    such Certified Shorthand Reporter, I was

7    present at and reported in Stenotype shorthand

8    the above and foregoing proceedings in Case

9    Number 20-CV-136-RGA-JLH, *ID IMAGE SENSING LLC*

10   *vs. OMNIVISION TECHNOLOGIES, INC.*, heard on

11   February 16, 2022.

12         I further certify that a transcript of

13   my shorthand notes was typed and that the

14   foregoing transcript, consisting of 24

15   typewritten pages, is a true copy of said

16   **DISCOVERY CONFERENCE**.

17         **SIGNED**, **OFFICIALLY SEALED**, and **FILED**

18   with the Clerk of the District Court, NEW

19   CASTLE County, Delaware, this 24th day of

20   February, 2022.

21

22         _____

23         Deanna L. Warner, CSR, #1687
           Speedbudget Enterprises, LLC

24

25

## #

**#1687** [1] - 24:22

## '

**'145** [6] - 10:8, 15:12, 15:14, 18:9, 19:9, 21:10

## 1

**103** [1] - 11:10
**10th** [2] - 4:1, 6:9
**13** [2] - 11:21, 14:21
**16** [1] - 24:11
**16th** [1] - 1:13

## 2

**20-CV-136-RGA** [1] - 1:5
**20-CV-136-RGA-JLH** [1] - 24:9
**20-CV-136-RGH-JLH** [1] - 2:4
**2022** [3] - 1:13, 24:11, 24:20
**22nd** [1] - 14:22
**24** [1] - 24:14
**24th** [1] - 24:19
**27th** [1] - 15:2

## 3

**3** [1] - 4:9
**33(b)** [1] - 15:1

## 4

**408** [1] - 15:16

## 5

**5B** [1] - 4:12

## 7

**7th** [1] - 6:5

## A

**able** [4] - 9:2, 19:2, 20:20, 22:16

**abridged** [1] - 6:15
**absent** [1] - 4:12
**Acacia** [7] - 7:11, 7:12, 7:13, 12:15, 15:9, 22:1, 22:8
**access** [1] - 9:17
**accordance** [1] - 23:6
**acknowledgment** [1] - 18:22
**acquired** [3] - 9:9, 15:11, 18:6
**acquisition** [4] - 2:21, 21:25, 22:7
**actively** [1] - 7:15
**actual** [1] - 15:20
**add** [3] - 3:2, 4:6
**added** [1] - 19:4
**addition** [1] - 13:21
**additional** [3] - 4:6, 6:14, 19:3
**addresses** [1] - 7:12
**adequate** [1] - 9:5
**afternoon** [4] - 2:9, 2:13, 2:15, 3:6
**agree** [3] - 8:18, 11:8, 18:4
**agreed** [1] - 17:14
**agreement** [14] - 11:18, 13:20, 15:13, 15:21, 16:3, 17:1, 17:6, 17:13, 17:18, 17:20, 17:21, 20:16, 22:9
**agreements** [5] - 14:16, 14:25, 15:4, 15:9, 18:6
**ahead** [3] - 3:5, 13:8, 23:5
**amount** [1] - 12:3
**analysis** [1] - 10:14
**AND** [1] - 1:2
**appearances** [2] - 2:7, 2:14
**APPEARANCES** [1] - 1:14
**applied** [1] - 5:20
**appreciate** [2] - 6:17, 16:8
**appropriate** [3] - 14:12, 15:6, 19:14
**Aptiva** [1] - 14:17
**area** [1] - 7:21
**areas** [2] - 8:24, 9:21
**argument** [3] - 12:20, 13:6, 14:14
**arises** [1] - 14:20
**arrived** [1] - 6:16
**asserted** [1] - 4:11
**asset** [1] - 15:15
**assignment** [1] - 17:3

**assignments** [2] - 14:17, 16:13
**assigns** [1] - 15:22
**assistance** [1] - 23:4
**attachments** [1] - 2:24
**attorney** [1] - 11:1
**available** [1] - 22:25
**aware** [3] - 7:15, 15:24, 17:4

## B

**Barack** [1] - 2:19
**BARACK** [1] - 1:23
**based** [2] - 4:19, 12:11
**basis** [1] - 12:16
**bear** [1] - 18:1
**behalf** [2] - 3:7, 14:19
**between** [1] - 20:14
**bit** [1] - 7:17
**Bluestone** [4] - 2:18, 2:21, 14:19, 21:19
**BLUESTONE** [5] - 1:24, 14:18, 21:18, 22:17, 22:22
**bother** [1] - 23:2
**bottom** [1] - 5:4
**brief** [1] - 3:10
**briefing** [1] - 3:11
**bring** [1] - 10:18
**broad** [2] - 9:2, 18:23
**broader** [1] - 5:15
**bunch** [1] - 8:12
**burden** [7] - 6:20, 8:3, 11:3, 11:13, 12:2, 13:23, 19:5
**burdensome** [1] - 19:17
**business** [2] - 8:3, 11:24
**BY** [1] - 1:15

## C

**calendar** [1] - 23:8
**camera** [5] - 11:17, 11:19, 11:25, 12:10, 19:10
**capture** [6] - 4:24, 6:23, 13:10, 13:12, 13:18, 19:18
**captured** [1] - 3:18
**care** [3] - 22:2, 22:5, 23:8
**Case** [1] - 1:5, 2:4, 24:8
**case** [10] - 3:19, 5:10, 6:11, 7:8, 9:5, 9:16,

10:15, 11:10, 19:21, 22:3
**cases** [1] - 17:8
**CASTLE** [2] - 24:3, 24:19
**center** [1] - 12:9
**certain** [2] - 8:24, 9:21
**certainly** [2] - 7:19, 11:8
**Certified** [1] - 24:4, 24:6
**certify** [2] - 24:5, 24:12
**cetera** [1] - 14:24
**checked** [1] - 11:22
**chips** [1] - 7:22
**circumstance** [1] - 15:21
**circumstances** [1] - 14:23
**clarification** [2] - 20:8, 21:14
**clear** [1] - 18:7
**clearly** [2] - 14:1, 16:1
**Clerk** [1] - 24:18
**close** [1] - 5:7
**closing** [1] - 22:23
**CMOS** [3] - 7:22, 9:1, 20:1
**co** [1] - 2:18
**co-counsel** [1] - 2:18
**collection** [1] - 5:24
**collective** [1] - 10:19
**comfortable** [1] - 10:11
**coming** [1] - 22:4
**comment** [1] - 11:5
**communications** [5] - 15:8, 16:12, 17:11, 17:16, 20:12
**companies** [2] - 9:23, 19:19
**company** [6] - 7:4, 9:11, 13:4, 13:5, 14:8, 15:8
**complaint** [1] - 12:8
**complete** [1] - 6:10
**completely** [2] - 9:18, 10:25
**concerns** [1] - 11:21
**conclusion** [2] - 15:7, 22:9
**confer** [4] - 3:25, 19:13, 19:25, 22:15
**CONFERENCE** [3] - 1:9, 1:11, 24:16
**consider** [1] - 21:21
**consideration** [1] - 17:2
**consisting** [1] - 24:14

10:15, 11:10, 19:21, 22:3

**contention** [1] - 10:14
**context** [3] - 14:20, 16:15, 16:20
**contexts** [1] - 17:7
**continue** [1] - 4:6
**conversations** [1] - 22:24
**Cooke** [1] - 2:12
**COOKE** [1] - 1:17
**copy** [1] - 24:15
**Corby** [2] - 2:11, 6:25
**CORBY** [1] - 1:18
**corporate** [1] - 9:24
**counsel** [6] - 1:19, 2:18, 3:5, 17:23, 18:18, 18:24
**Counsel** [1] - 1:25
**count** [1] - 6:23
**counts** [1] - 19:12
**COUNTY** [1] - 24:3
**County** [1] - 24:19
**couple** [1] - 2:25
**course** [1] - 21:9
**COURT** [22] - 1:1, 2:1, 2:13, 2:23, 5:11, 6:17, 8:11, 9:18, 11:4, 12:18, 13:9, 14:4, 14:13, 16:8, 17:22, 20:17, 21:3, 21:8, 21:16, 22:12, 22:19, 23:3
**Court** [5] - 6:22, 7:15, 17:8, 20:15, 24:18
**court** [2] - 2:4, 2:5
**Court's** [1] - 21:15
**created** [1] - 19:19
**creating** [1] - 20:22
**CSR** [1] - 24:22
**culminated** [1] - 16:25
**current** [1] - 7:14
**custodians** [1] - 4:7

## D

**damages** [1] - 15:19
**date** [3] - 6:8, 6:14, 11:11
**David** [2] - 2:18, 14:19
**DAVID** [1] - 1:24
**days** [1] - 6:8
**deadline** [1] - 6:9
**Deanna** [3] - 2:6, 24:4, 24:22
**December** [3] - 6:5, 6:9, 15:2
**Defendant** [3] - 1:8, 1:25, 3:8
**defendant** [16] - 2:14, 2:16, 3:5, 6:11, 9:12,

11:5, 11:11, 12:4,
17:1, 18:4, 18:16,
18:22, 19:8, 19:12,
19:22, 21:17
**defendant's** [2] - 3:4,
3:15
**defendants** [2] - 9:12,
18:11
**Delaware** [1] - 24:19
**DELAWARE** [2] - 1:2,
24:2
**delay** [1] - 6:7
**demonstrably** [1] -
3:13
**demonstrates** [3] -
3:11, 3:21, 12:1
**denied** [1] - 20:3
**deposition** [1] - 9:14
**depositions** [1] - 5:6
**depth** [2] - 7:23, 16:17
**describe** [2] - 12:9,
14:22
**despite** [1] - 4:18
**detailed** [1] - 18:25
**determination** [1] -
6:22
**different** [4] - 7:13,
8:13, 9:11, 10:18
**disclosed** [3] - 4:8,
6:5, 6:13
**disclosures** [1] - 4:9
**DISCOVERY** [3] - 1:9,
1:11, 24:16
**discovery** [5] - 5:5,
12:3, 15:13, 22:23,
23:7
**discuss** [2] - 5:19,
19:23
**discussed** [1] - 20:9
**discussing** [1] - 5:16
**discussions** [2] -
16:19, 20:14
**dismiss** [1] - 22:3
**disproportionate** [2] -
12:3, 14:2
**dispute** [4] - 15:12,
15:14, 18:1, 23:7
**District** [1] - 24:18
**DISTRICT** [2] - 1:1, 1:2
**document** [8] - 2:22,
5:17, 6:3, 13:12,
20:22, 20:25
**document-by-
document** [1] - 20:22
**documents** [20] -
3:19, 4:6, 5:9, 7:5,
7:20, 8:5, 8:7, 9:8,
9:13, 9:15, 11:10,
11:20, 12:12, 12:24,
14:16, 15:3, 18:5,

18:13, 19:18, 20:12
**domain** [1] - 7:12
**done** [1] - 5:24
**down** [1] - 9:4
**drafted** [1] - 13:11
**drafts** [3] - 17:18,
20:15, 20:19
**due** [1] - 9:9
**Dwight** [1] - 8:13

---

## E

**e-mail** [2] - 3:24, 7:12
**e-mails** [7] - 4:2, 7:6,
7:9, 7:20, 7:21, 8:5,
8:7
**ease** [1] - 19:5
**Educate** [2] - 2:19, 3:7
**EDUCATE** [5] - 1:24,
3:6, 3:9, 5:25, 11:7
**educate** [1] - 2:20
**either** [2] - 12:7, 19:2
**employee** [1] - 7:8
**employees** [1] - 7:11
**encompass** [4] - 7:20,
8:7, 8:21
**end** [1] - 21:12
**enforce** [1] - 7:16
**Enterprises** [1] -
24:23
**entities** [2] - 7:19,
12:11
**entitled** [1] - 19:8
**entitlement** [1] - 21:8
**entity** [6] - 7:10, 7:23,
12:14, 16:17, 22:1,
22:8
**ESI** [3] - 2:20, 4:9,
4:12
**ESQ** [5] - 1:15, 1:18,
1:21, 1:24, 1:24
**essentially** [2] - 7:5,
8:4
**established** [1] - 4:20
**et** [1] - 14:24
**evidence** [1] - 10:16
**example** [3] - 3:21,
11:15, 22:2
**except** [1] - 21:11
**exchanged** [4] - 6:3,
15:15, 15:20, 20:18
**exclusively** [1] - 11:23
**exhibit** [2] - 3:20,
11:20
**expense** [1] - 12:4
**explore** [1] - 19:8
**extent** [3] - 13:24,
16:18, 21:22

---

## F

**facially** [1] - 9:20
**fact** [3] - 4:18, 21:11,
22:22
**factor** [2] - 15:17,
15:18
**facts** [2] - 14:22, 15:5
**fair** [2] - 5:25, 13:16
**Fairchild** [2] - 12:13,
21:9
**fairchild** [4] - 12:25,
13:3, 14:17, 22:3
**family** [1] - 9:24
**FARNAN** [5] - 1:15,
1:15, 1:21, 2:9, 2:15
**Farnan** [2] - 2:10, 2:17
**February** [4] - 1:13,
4:1, 24:11, 24:20
**Ferrazzano** [1] - 2:19
**FERRAZZANO** [1] -
1:23
**few** [1] - 3:1
**figure** [1] - 20:23
**file** [1] - 23:5
**FILED** [1] - 24:17
**filing** [1] - 22:5
**final** [6] - 15:4, 16:2,
17:6, 17:12, 17:20,
22:9
**finally** [1] - 20:1
**FINGER** [1] - 1:20
**finger** [1] - 2:17
**firm** [1] - 16:15
**first** [12] - 3:15, 3:16,
3:22, 4:15, 6:2,
12:15, 12:19, 12:23,
13:7, 13:9, 14:3,
18:21
**focused** [1] - 16:23
**followed** [1] - 15:2
**following** [1] - 14:4
**FOR** [1] - 1:2
**foregoing** [2] - 24:8,
24:14
**forward** [1] - 20:5
**four** [1] - 4:5
**fourth** [1] - 4:4
**frame** [4] - 21:20,
21:22, 22:6, 22:10
**FRIEDMAN** [1] - 1:17
**Friedman** [1] - 2:11
**FTM** [1] - 13:4
**full** [1] - 10:9

---

## G

**generally** [2] - 8:24,

17:10
**given** [6] - 3:13, 5:1,
5:5, 6:12, 12:2,
17:14
**grand** [1] - 15:18
**group** [1] - 10:19
**guess** [3] - 5:15, 14:7,
20:12
**guidance** [1] - 20:5

---

## H

**Hall** [2] - 1:12, 2:1
**handle** [1] - 2:20
**handling** [1] - 2:21
**happy** [3] - 5:3, 14:2,
21:1
**hear** [4] - 3:5, 5:13,
5:22, 14:13
**heard** [2] - 11:6,
19:22, 24:10
**hearing** [1] - 17:24
**hereby** [1] - 24:5
**high** [2] - 7:21, 7:24
**high-tech** [2] - 7:21,
7:24
**hit** [2] - 6:22, 19:12
**Honor** [28] - 2:10,
2:16, 3:7, 3:10, 3:25,
4:7, 5:4, 6:1, 6:24,
7:1, 8:16, 10:3, 11:7,
11:15, 13:8, 13:15,
13:21, 14:18, 15:18,
15:25, 16:14, 17:4,
20:7, 20:10, 21:13,
21:18, 22:18, 22:21
**Honorable** [1] - 1:12
**hope** [2] - 20:20,
22:24
**hopefully** [3] - 19:1,
20:4, 23:1
**host** [1] - 19:18
**hundred** [1] - 11:12

---

## I

**ID** [1] - 7:3
**identified** [1] - 11:16
**identify** [2] - 6:6,
12:10
**IMAGE** [2] - 1:3, 24:9
**image** [4] - 4:25,
11:25, 12:8, 19:10
**Image** [3] - 2:3, 7:4,
13:5
**imagine** [1] - 16:22
**immediately** [1] - 22:6
**important** [1] - 15:6

**IN** [2] - 1:1, 1:2
**inadequate** [3] - 3:13,
3:17, 6:12
**inappropriate** [1] -
12:17
**INC** [2] - 1:7, 24:10
**included** [1] - 10:8
**including** [3] - 4:7,
7:6, 13:2
**indicated** [1] - 4:1
**information** [4] - 10:4,
15:23, 16:2, 17:5
**initial** [4] - 3:20, 4:9,
10:7, 22:2
**instead** [3] - 4:14,
7:11, 20:21
**interest** [1] - 15:10
**internal** [1] - 20:19
**interrogatory** [1] -
14:21
**inventor** [2] - 3:23,
9:10
**inventor's** [1] - 3:16
**involve** [1] - 21:11
**involved** [5] - 16:18,
17:2, 17:3, 17:16,
21:10
**irrelevant** [2] - 10:25,
13:6
**issue** [8] - 2:22, 5:23,
6:19, 8:9, 8:10,
14:14, 18:2, 20:8
**issues** [4] - 2:20,
14:15, 18:12, 19:7
**itself** [3] - 8:20, 10:18,
16:3

---

## J

**Jennifer** [2] - 1:12, 2:1
**JLH** [1] - 1:6
**job** [1] - 9:5
**joined** [1] - 2:18
**Judge** [1] - 4:10

---

## K

**keep** [1] - 16:6
**KELLY** [1] - 1:21
**Kelly** [2] - 2:16
**KIRSCHBAUM** [1] -
1:23
**knowing** [1] - 13:23
**knowledge** [1] - 18:25

---

## L

**last** [6] - 3:8, 3:16,

3:22, 8:19, 10:11, 11:22
**lawyers** [1] - 16:16
**LAYTON** [1] - 1:20
**layton** [1] - 2:17
**leading** [1] - 16:13
**least** [2] - 6:1, 8:6
**leave** [1] - 16:4
**less** [1] - 17:12
**letter** [1] - 15:2
**letters** [1] - 2:24
**license** [4] - 7:15, 9:11, 14:24, 20:2
**likely** [1] - 10:21
**limit** [3] - 10:9, 13:17, 19:5
**limitation** [2] - 14:5, 19:3
**limitations** [2] - 19:14, 19:24
**limited** [3] - 12:12, 21:5, 21:6
**line** [2] - 2:5, 2:11
**list** [3] - 15:23, 16:23, 18:15
**litigating** [1] - 11:24
**litigation** [5] - 12:25, 13:13, 16:18, 16:23, 21:10
**LLC** [3] - 1:3, 24:9, 24:23
**LLP** [2] - 1:15, 1:23
**log** [2] - 4:4, 20:22
**logs** [2] - 4:5, 20:24
**look** [2] - 6:12, 12:24
**looking** [1] - 9:20
**looks** [1] - 13:11

**M**

**mail** [2] - 3:24, 7:12
**mails** [7] - 4:2, 7:6, 7:9, 7:20, 7:21, 8:5, 8:7
**majority** [1] - 10:24
**marginal** [1] - 18:8
**mark** [1] - 20:19
**massive** [1] - 4:24
**materials** [1] - 4:24
**meet** [4] - 3:25, 19:13, 19:24, 22:15
**meet-and-confer** [1] - 3:25
**mentioned** [2] - 7:23, 13:22
**merely** [1] - 15:15
**MICHAEL** [2] - 1:15, 1:24
**Michael** [3] - 2:10,

2:19, 3:7
**might** [12] - 2:25, 7:17, 8:20, 8:21, 9:22, 12:21, 18:13, 19:3, 19:16, 19:17, 19:19, 21:20
**minutes** [1] - 3:2
**mischaracterized** [1] - 4:11
**module** [4] - 11:17, 11:19, 12:10, 19:10
**modules** [1] - 11:25
**monetary** [1] - 17:2
**month** [1] - 22:4
**months** [1] - 6:4
**Morris** [1] - 21:10
**most** [3] - 7:5, 15:17, 17:7
**motion** [3] - 3:4, 3:20, 23:5
**move** [1] - 20:5
**moving** [1] - 5:6
**MR** [20] - 2:9, 3:6, 5:25, 6:24, 8:16, 10:3, 11:7, 13:8, 13:15, 14:11, 14:18, 16:14, 20:7, 21:1, 21:4, 21:13, 21:18, 22:17, 22:20, 22:22
**MS** [1] - 2:15

**N**

**NAGELBERG** [1] - 1:23
**name** [7] - 3:8, 3:15, 3:16, 3:22, 8:18, 8:19
**narrow** [2] - 4:17, 9:4
**nature** [3] - 5:1, 5:2, 8:2
**need** [8] - 4:2, 4:3, 5:7, 13:14, 17:15, 19:13, 19:24, 23:4
**needs** [1] - 19:11
**negotiating** [1] - 13:20
**negotiation** [1] - 12:25
**negotiations** [9] - 15:8, 16:12, 16:19, 17:10, 17:12, 18:11, 19:1, 20:9, 21:23
**NEW** [2] - 24:3, 24:18
**normal** [2] - 9:16, 11:9
**notes** [1] - 24:13
**nothing** [4] - 4:21, 12:1, 22:20
**November** [1] - 14:22
**Number** [2] - 2:4, 24:9
**number** [4] - 7:13,

10:10, 13:1, 14:21
**numbers** [1] - 10:11

**O**

**observation** [1] - 13:17
**obviously** [1] - 6:8
**occurring** [1] - 19:1
**OF** [4] - 1:2, 1:9, 24:2, 24:3
**offer** [1] - 22:3
**offers** [1] - 17:17
**OFFICIALLY** [1] - 24:17
**often** [1] - 10:10
**OMNIVISION** [2] - 1:7, 24:10
**Omnivision** [16] - 2:3, 2:16, 3:8, 8:25, 9:20, 9:25, 10:8, 10:12, 10:17, 14:7, 14:19, 14:20, 15:7, 19:15, 19:20
**once** [1] - 8:12
**one** [11] - 7:1, 8:17, 10:6, 11:9, 11:16, 12:5, 12:6, 12:19, 12:23, 15:18, 16:16
**ones** [2] - 6:14, 11:16
**ongoing** [1] - 16:24
**operations** [1] - 4:22
**order** [1] - 18:17
**outstanding** [1] - 23:3
**overbroad** [4] - 4:16, 4:21, 9:22, 10:2
**overlap** [1] - 7:17
**own** [2] - 3:15, 12:4
**ownership** [1] - 14:23

**P**

**P.A** [1] - 1:20
**page** [1] - 11:21
**pages** [2] - 11:12, 24:15
**papers** [2] - 7:3, 17:4
**parent** [2] - 7:4, 11:23
**parents** [1] - 4:22
**part** [3] - 4:12, 12:20, 20:13
**particular** [8] - 5:2, 5:12, 7:2, 7:7, 7:9, 7:18, 8:17, 12:13
**particularly** [1] - 7:25
**parties** [7] - 3:11, 17:14, 17:19, 19:4, 19:13, 19:24, 20:14

**parties'** [1] - 13:2
**partly** [1] - 9:9
**past** [1] - 7:14
**patent** [26] - 3:14, 4:3, 7:7, 8:25, 9:8, 9:16, 10:9, 10:14, 10:15, 11:9, 11:18, 12:10, 12:15, 13:3, 13:5, 15:11, 15:12, 15:14, 15:18, 15:20, 18:9, 19:9, 21:10, 21:24, 21:25, 22:7
**patents** [9] - 7:16, 8:9, 9:21, 10:10, 11:24, 14:24, 17:3, 18:7, 22:4
**perfectly** [1] - 22:13
**perhaps** [1] - 8:19
**period** [1] - 13:19
**person** [1] - 12:21
**perspective** [1] - 6:1
**phone** [3] - 18:19, 18:23, 19:22
**picked** [1] - 9:3
**place** [2] - 4:15, 12:15
**Plaintiff** [2] - 1:4, 1:19
**plaintiff** [26] - 2:8, 3:13, 4:1, 4:10, 5:1, 5:2, 6:25, 7:3, 9:7, 9:11, 9:17, 11:10, 11:13, 11:23, 12:2, 13:4, 13:24, 15:10, 16:10, 18:5, 18:18, 18:24, 19:6, 19:11, 20:5, 22:21
**plaintiff's** [3] - 3:15, 18:8, 9:16
**Plaintiffs** [1] - 4:22
**planning** [1] - 9:14
**play** [1] - 22:8
**point** [6] - 4:10, 13:16, 13:22, 14:5, 18:8, 19:16
**poplin** [4] - 8:14, 8:19, 18:17
**Poplin** [1] - 9:13
**portion** [1] - 18:14
**position** [1] - 17:23
**potentially** [1] - 8:7
**preceding** [1] - 22:6
**predecessor** [1] - 15:10
**present** [1] - 24:7
**previous** [1] - 4:5
**previously** [1] - 15:24
**privilege** [4] - 4:4, 11:2, 20:22
**privileged** [2] - 10:4, 20:20
**probative** [3] - 17:12,

19:7, 22:5
**procedures** [1] - 23:7
**proceedings** [1] - 24:8
**produce** [4] - 15:3, 18:5, 20:11, 20:15
**produced** [6] - 5:17, 5:18, 9:16, 11:10, 11:11, 15:1
**production** [1] - 6:10
**proffered** [1] - 18:12
**propose** [2] - 5:20, 22:14
**provide** [2] - 3:24, 19:12
**provided** [3] - 11:20, 12:4, 12:12
**purposely** [1] - 12:6
**pursuant** [1] - 15:1
**put** [1] - 11:4
**puts** [1] - 11:3

**Q**

**questions** [9] - 3:3, 5:4, 5:12, 5:14, 16:5, 16:9, 20:6, 21:17, 22:19

**R**

**reached** [1] - 14:3
**ready** [1] - 17:25
**really** [7] - 10:1, 12:16, 13:10, 15:6, 17:6, 19:21, 22:1
**reason** [1] - 9:23
**reasonable** [3] - 8:14, 8:15, 22:13
**received** [1] - 12:15
**recognize** [1] - 21:9
**record** [2] - 3:9, 12:1
**refer** [1] - 11:20
**referenced** [2] - 14:25, 17:9
**referred** [2] - 10:10, 11:19
**refused** [2] - 4:18, 6:14
**refusing** [1] - 4:14
**relate** [1] - 7:21
**related** [23] - 4:3, 4:25, 7:6, 7:7, 7:16, 8:1, 8:5, 8:8, 8:24, 9:8, 10:12, 10:13, 10:14, 11:24, 12:14, 14:8, 14:15, 14:16, 14:23, 15:12, 17:5, 17:11, 20:13

**relates** [1] - 15:13
**relating** [1] - 18:6
**relevance** [1] - 18:9
**relevancy** [1] - 11:2
**relevant** [14] - 3:18, 5:9, 9:4, 10:13, 12:11, 13:1, 13:13, 13:19, 15:17, 15:23, 16:1, 16:12, 18:13, 22:11
**reported** [1] - 24:7
**reporter** [2] - 2:5
**Reporter** [2] - 24:5, 24:6
**represented** [1] - 16:16
**request** [1] - 20:2
**requested** [1] - 6:21
**requests** [2] - 5:17, 6:3
**requiring** [2] - 20:11, 20:15
**resolved** [1] - 22:16
**resolving** [1] - 16:23
**respect** [4] - 18:21, 19:8, 19:10, 19:15
**responded** [1] - 6:11
**response** [2] - 4:19, 6:7
**responses** [2] - 6:3, 14:25
**responsiveness** [1] - 11:2
**result** [2] - 10:21, 13:23
**results** [2] - 10:23, 13:25
**return** [1] - 21:24
**review** [1] - 14:10
**reviewed** [1] - 2:24
**reviewing** [2] - 11:1
**Richards** [1] - 2:17
**RICHARDS** [1] - 1:20
**rule** [2] - 15:1, 17:25
**Rule** [2] - 4:9, 15:16
**rules** [1] - 4:12
**ruling** [3] - 18:15, 20:6, 21:15
**run** [10] - 3:12, 4:15, 5:7, 6:13, 9:2, 10:20, 11:14, 18:16, 18:17, 19:11
**running** [1] - 6:6

## S

**scope** [5] - 4:17, 9:4, 20:6, 21:5, 21:6
**SEALED** [1] - 24:17

**search** [25] - 3:12, 4:2, 4:23, 5:19, 6:5, 6:6, 6:19, 6:20, 6:21, 8:13, 8:14, 8:15, 9:3, 10:7, 10:23, 13:9, 14:7, 18:10, 18:15, 18:17, 19:4, 19:5, 19:6, 19:15
**searched** [2] - 3:14, 3:22
**searches** [2] - 3:17, 13:24
**searching** [1] - 8:4
**second** [5] - 12:20, 14:14, 18:2, 18:14, 20:8
**see** [4] - 9:15, 9:21, 12:16, 17:15
**seek** [1] - 15:13
**seeking** [1] - 15:7
**Semi** [1] - 13:4
**semiconductor** [2] - 7:22, 12:13
**sense** [2] - 5:8, 13:17
**SENSING** [2] - 1:3, 24:9
**Sensing** [3] - 2:3, 7:4, 13:5
**sensitivities** [1] - 15:16
**sensor** [1] - 19:11
**sensors** [2] - 4:25, 11:25
**separate** [1] - 7:8
**served** [1] - 14:21
**settlement** [10] - 11:18, 13:20, 16:19, 16:22, 17:5, 17:11, 17:17, 18:25, 20:9, 20:14
**several** [2] - 6:4, 16:24
**Shorthand** [2] - 24:5, 24:6
**shorthand** [2] - 24:7, 24:13
**showing** [2] - 4:13, 12:24
**side** [9] - 3:1, 5:13, 6:18, 15:19, 20:18, 20:21, 21:2, 22:14, 22:25
**SIGNED** [1] - 24:17
**significant** [1] - 10:22
**simple** [1] - 16:6
**simply** [2] - 4:14, 4:15
**sister** [1] - 19:19
**sit** [1] - 10:5
**situation** [1] - 7:2
**situations** [1] - 17:9
**soon** [1] - 22:23

**sorry** [2] - 6:24, 21:7
**sort** [1] - 6:15
**sounds** [2] - 22:12, 23:3
**speaking** [1] - 17:10
**specific** [1] - 10:16
**Speedbudget** [1] - 24:23
**spelled** [1] - 3:8
**ss** [1] - 24:2
**stage** [1] - 14:3
**start** [3] - 12:19, 16:6, 18:1
**starting** [1] - 2:7
**STATE** [1] - 24:2
**STATES** [1] - 1:1
**Stenotype** [1] - 24:7
**still** [2] - 5:5, 5:9
**string** [4] - 13:9, 14:7, 19:4, 19:25
**strings** [1] - 19:6
**strobe** [1] - 19:11
**strong** [1] - 12:8
**subpoenaed** [1] - 9:13
**subsidiaries** [2] - 7:14, 8:8
**subsidiary** [2] - 8:6, 15:9
**substantially** [1] - 6:10
**subsumed** [1] - 17:6
**SUDER** [1] - 1:17
**Suder** [1] - 2:11
**sued** [1] - 9:25
**sufficient** [2] - 15:4, 17:21
**suggest** [2] - 4:21, 4:23
**suggestion** [2] - 21:20, 22:13
**suing** [3] - 9:25, 14:9, 19:20
**suit** [2] - 15:11, 15:20
**supplemental** [1] - 4:4
**swath** [1] - 4:24
**switch** [1] - 16:9

## T

**target** [1] - 12:6
**tech** [2] - 7:21, 7:24
**TECHNOLOGIES** [2] - 1:7, 24:10
**technologies** [3] - 7:17, 7:24, 7:25
**Technologies** [1] - 2:3
**technology** [6] - 5:1, 7:18, 7:22, 8:10, 8:25, 9:22

**teleconference** [3] - 1:13, 2:2, 23:6
**ten** [1] - 4:13
**term** [9] - 5:3, 8:14, 8:15, 10:17, 11:16, 18:17, 18:21, 19:16
**terms** [28] - 3:12, 4:14, 4:15, 4:20, 4:23, 5:8, 5:12, 5:14, 5:19, 6:5, 6:6, 6:19, 6:21, 8:13, 9:3, 10:7, 10:20, 11:14, 11:22, 12:5, 12:7, 12:14, 16:25, 17:5, 17:17, 18:16, 19:3, 19:12
**test** [2] - 7:23, 16:17
**thankfully** [1] - 18:24
**THE** [23] - 1:1, 1:2, 2:1, 2:13, 2:23, 5:11, 6:17, 8:11, 9:18, 11:4, 12:18, 13:9, 14:4, 14:13, 16:8, 17:22, 20:17, 21:3, 21:8, 21:16, 22:12, 22:19, 23:3
**they've** [2] - 3:14, 5:24, 6:14
**thinking** [3] - 9:24, 19:20, 22:10
**thoughts** [1] - 2:25
**thousand** [1] - 11:12
**thousands** [1] - 11:11
**three** [4] - 6:8, 10:11, 17:3, 18:7
**today** [7] - 2:5, 5:16, 10:5, 17:25, 18:3, 18:20, 19:22
**together** [1] - 5:19
**TRANSCRIPT** [1] - 1:9
**transcript** [2] - 24:12, 24:14
**transferred** [1] - 21:12
**transition** [1] - 12:20
**tried** [1] - 12:6
**true** [1] - 24:15
**try** [1] - 9:3
**trying** [1] - 13:18
**turn** [2] - 6:18, 19:17
**two** [3] - 14:15, 14:25, 15:5
**typed** [1] - 24:13
**typewritten** [1] - 24:15

## U

**U.S.M.J** [1] - 1:12
**ultimately** [4] - 7:25, 16:25, 17:13, 17:19
**underlying** [1] - 4:25

**understood** [1] - 18:18
**undue** [5] - 6:20, 8:3, 11:3, 11:13, 12:2
**unfortunately** [1] - 9:7
**unique** [2] - 7:1, 8:18
**UNITED** [1] - 1:1
**universe** [1] - 15:19
**unrelated** [1] - 8:9
**up** [4] - 4:13, 10:18, 14:4, 15:2

## V

**valuation** [1] - 13:2
**value** [1] - 15:20
**vast** [1] - 10:24
**version** [1] - 6:15
**versus** [1] - 2:3
**via** [1] - 2:11
**vowell** [1] - 2:11
**VOWELL** [13] - 1:18, 6:24, 8:16, 10:3, 13:8, 13:15, 14:11, 16:14, 20:7, 21:1, 21:4, 21:13, 22:20
**Vowell** [2] - 6:25, 11:8
**vs** [2] - 1:5, 24:9

## W

**wants** [1] - 18:16
**Warner** [2] - 2:6, 24:22
**warner** [1] - 24:4
**waste** [1] - 15:25
**week** [2] - 22:25, 23:1
**whereby** [2] - 18:6, 19:4
**whole** [2] - 15:23, 19:18
**willing** [3] - 13:25, 18:19, 19:23
**words** [2] - 12:8, 12:9
**works** [1] - 9:11
**worth** [1] - 18:9
**worthwhile** [2] - 18:10, 21:21

## Y

**years** [1] - 16:24